*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0467p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VALENTINA PEPAJ,

*Petitioner,*

*v.*

No. 06-3617

MICHAEL B. MUKASEY, United States Attorney
General,

*Respondent.*

>

On Appeal from the
Board of Immigration Appeals.
No. A70 449 827.

Argued: July 23, 2007

Decided and Filed: December 3, 2007

Before: BATCHELDER and DAUGHTREY, Circuit Judges; ROSEN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Andrea J. Ferrara, LAW OFFICES OF ANDREA J. FERRARA, Eastpointe, Michigan,
for Petitioner. Jamie M. Dowd, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent. **ON BRIEF:** Andrea J. Ferrara, LAW OFFICES OF ANDREA J.
FERRARA, Eastpointe, Michigan, for Petitioner. Jamie M. Dowd, Cindy S. Ferrier, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Petitioner Valentina Pepaj petitions for review
of the order of the Board of Immigration Appeals ("BIA"), which dismissed her appeal of an
Immigration Judge's ("IJ's") order denying Ms. Pepaj's motion to reopen her removal proceedings.
Ms. Pepaj claims that she is entitled to a reopening of the proceedings. She asserts two alternative
reasons: (1) because she was prejudiced in the earlier proceedings by her counsel's ineffective
assistance, or (2) because conditions in her country of nationality have changed. We conclude that
Ms. Pepaj has not met the requirements for bringing a claim of ineffective assistance of counsel, and

---

[*]The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by
designation.

1

that we lack jurisdiction to review the BIA's determination that she has not shown changed country conditions. We therefore deny the petition for review.

Ms. Pepaj is a native and citizen of Albania, who arrived in the United States in 1991. In 1992, her status was adjusted to that of lawful permanent resident. In 1994, after shooting a man who she claims attacked and raped her in her home, she was convicted by the state court in Michigan of voluntary manslaughter and of a felony firearm offense. She was sentenced to two to fifteen years in prison on the manslaughter conviction and two years in prison on the firearm offense.

In 1996, the INS placed Ms. Pepaj in removal proceedings as an alien convicted of an aggravated felony, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Her application for withholding of removal was denied, and on November 10, 1999, at the conclusion of the removal proceedings, the IJ ordered Ms. Pepaj removed from the United States.[1] Ms. Pepaj then had 30 days to appeal the decision to the BIA. *See* 8 C.F.R. § 1003.38(b). It is noteworthy that, in formalizing a written order from its oral opinion, the IJ had noted: "Appeal Due By: Dec 10, 1999." Ms. Pepaj filed her appeal with the BIA on December 13, 1999 — three days late. Consequently, in an order filed on January 7, 2000, the BIA dismissed the appeal as untimely.

On March 31, 2000, Ms. Pepaj filed a "Motion to Reopen," urging that her untimeliness should be excused because it was actually the fault of the United States Postal Service. The BIA construed the motion as a "Motion to Reconsider"; held that "postal or delivery delays do not constitute 'exceptional circumstances'"; and, by order dated April 10, 2003, denied the motion. On November 20, 2005, the Immigration and Customs Enforcement took Ms. Pepaj into custody. While in detention, Ms. Pepaj obtained new counsel and pursued a collateral action.

On December 21, 2005, Ms. Pepaj filed an "Emergency Motion to Reopen Removal Proceedings" in the Immigration Court, asserting two bases: ineffective assistance of her prior counsel in failing to file for relief under the Convention Against Torture ("CAT"), and changed country conditions. The IJ denied the motion as untimely and noted that Ms. Pepaj "fail[ed] to establish any new facts or legal basis to sustain a motion to reopen," as her "alleged fear of torture [is] not based upon newly discovered evidence or facts" (order dated December 22, 2005).[2] Ms. Pepaj appealed to the BIA that same day and, on February 2, 2006, submitted a "Supplemental Memorandum of Law," asserting that because of a change in her personal circumstances, she is also "eligible for withholding under CAT." This claim is premised on her husband Gjon Pepaj's 2003 conviction for first degree murder after he killed a man Ms. Pepaj alleged had been hired to kill him. Ms. Pepaj claims that, under the ancient laws of Albania, she and her husband are the victims of a blood feud with the family of the attacker whom she killed in 1993; her attacker has family in Albania; and if she were to return to that country, the Albanian government would be neither willing nor able to protect her from the family of her attacker.

On April 10, 2006, the BIA dismissed her appeal, explaining that a Motion to Reopen must be filed within 90 days of the final decision, *see* 8 C.F.R. § 1003.23(b)(1); that Ms. Pepaj's motion was nearly six years too late; and that her asserted excuses were of no avail. The BIA considered

---

[1] Recognizing that the Convention Against Torture (CAT) regulations had recently become effective, the Immigration Judge had issued a written notice to Ms. Pepaj, instructing her that if she intended to file for relief under CAT, she would have to do so at least 14 days before the November 10, 1999 hearing. She did not do so.

[2] On December 27, 2005, the DHS moved the IJ to reconsider, on the basis that the "Immigration Court lacks jurisdiction in this case to rule on the motions presented by [Ms. Pepaj], as venue [i.e., jurisdiction] currently lies with the [BIA]." On December 28, 2005, the Immigration Court agreed, granted the motion, and (purportedly) revoked the December 22, 2005, order for lack of jurisdiction. The BIA, however, ruled on the direct appeal without considering the subsequent lack-of-jurisdiction decision, and that decision has no bearing on the present appeal.

Ms. Pepaj's claim of ineffective assistance under the standard of *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and determined that she could not demonstrate any prejudice resulting from her counsel's alleged ineffectiveness. The BIA considered Ms. Pepaj's claim of changed conditions under 8 U.S.C. § 1229a(c)(7)(C)(ii) (changed country conditions) and § 1158(a)(2)(D) (changed personal circumstances), and determined that she was not in fact alleging changed country conditions, but only changed personal circumstances, a claim that does not allow for an untimely motion to reopen.

On appeal, Ms. Pepaj admits that she has not met the third *Lozada* requirement — that "a complaint has been filed with appropriate disciplinary authorities regarding [the ineffective] representation, and if not, [that she state] why not," *Lozada*, 19 I. & N. Dec. at 639 — but insists that she need not do so because this requirement is an unconstitutional denial of equal protection, inasmuch as it "is disparate treatment directed only at Immigration attorneys," which "serves no rational basis under the law." Ms. Pepaj is mistaken. "The requirement that disciplinary authorities be notified of breaches of professional conduct not only serves to deter meritless claims of ineffective representation but also highlights the standards which should be expected of attorneys who represent persons in immigration proceedings, the outcome of which may, and often does, have enormous significance for the person." *Lozada*, 19 I. & N. Dec. at 639-40. An alien who fails to comply with *Lozada*'s requirements forfeits her ineffective-assistance-of-counsel claim. *See*, *e.g.*, *Hamid v. Ashcroft*, 336 F.3d 465, 469 (6th Cir. 2003). Ms. Pepaj has forfeited this claim.

Ms. Pepaj also argues that she demonstrated changed country conditions rather than changed personal circumstances, in that she "presented new facts to the Board regarding recent problems with Blood Feuds in Albania," which, she claims, have "been escalating tremendously since 2001." But we conclude that we have no appellate jurisdiction over this factual determination, *see Almuhtaseb v. Gonzales*, 453 F.3d 743, 748-49 (6th Cir. 2006), and this aspect of her appeal must be dismissed.

In *Almuhtaseb*, we considered whether the provision of the REAL ID Act of 2005, now codified at 8 U.S.C. § 1252(a)(2)(D), authorized us to review a denial of asylum based on untimeliness; a review which had previously been barred by 8 U.S.C. § 1158(a)(3). *Id*. at 747. After reviewing reasoning from our sister circuits and the Act's legislative history, we concluded that "the purpose of [§ 1252(a)(2)(D)] is to permit judicial review over those issues that were historically reviewable on habeas — constitutional and statutory-construction questions, not discretionary or factual questions." *Id*. at 748 (citations, quotation marks, edits, and emphasis omitted). Consequently, we held that we are still barred from reviewing "asylum applications denied for untimeliness [] when the appeal seeks review of [only] discretionary or factual questions." *Id*.

In the present case, Ms. Pepaj concedes that she is an alien subject to removal because she was convicted of an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii). Judicial review of her case is therefore governed by 8 U.S.C. § 1252(a)(2)(C) and (D)[3]. She argues, however, that

---

[3] Section 1252(a)(2)(C) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

Section 1252(a)(2)(D) provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional

circumstances in her home country have changed, and that change in conditions justifies our review. Ms. Almuhtaseb made this same argument and we explained that "the existence of 'changed circumstances' that materially affect eligibility for asylum is a predominantly factual determination, which will invariably turn on the facts of a given case" and "[b]ecause [Ms.] Almuhtaseb's claim relies on contesting these sorts of factual determinations rather than on statutory construction or a constitutional claim, we are without jurisdiction to review the BIA's determination denying her asylum." *Id*. (citations, quotation marks, and footnote omitted). We therefore dismissed her appeal for lack of appellate jurisdiction. *Id*. at 748-49. The same governing statutes and the same reasoning require that we dismiss Ms. Pepaj's appeal.

After carefully reviewing the record, the law, and the parties' briefs, we conclude that we must deny the petition for review. Ms. Pepaj failed to establish that she complied with the *Lozada* preconditions necessary to bring a claim of ineffective assistance of counsel, and therefore, we must **AFFIRM** the BIA on that claim. Correspondingly, we find that Ms. Pepaj has raised only a question of fact regarding her claim of changed country conditions, and we are therefore without jurisdiction to review that decision, and must **DISMISS** her appeal as to that claim.

---

claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.