NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0380n.06

No. 08-3875

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 01, 2009**
LEONARD GREEN, Clerk

LUCY WANGUI NJOROGE,                            )
                                                )
    Petitioner,                                )
                                                )
v.                                              )    ON PETITION FOR REVIEW FROM
                                                )    THE BOARD OF IMMIGRATION
ERIC HOLDER, Attorney General,                  )    APPEALS
                                                )
    Respondent.                                )
                                                )
                                                )

Before: SILER, GILMAN and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Lucy Njoroge, a citizen of Kenya, petitions for review of the Board of Immigration Appeals' (BIA) decision dismissing her claims for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). She also appeals the BIA's denial of her motion to remand on the basis of ineffective assistance of counsel. We deny the petition.

I.

Njoroge came to the United States as a visitor and remained beyond the authorized period. Over two years after her arrival, in March 2004, she applied for asylum and withholding of removal under the Immigration and Nationality Act (INA) and the Convention Against Torture. Her application was untimely, but the Immigration Judge (IJ) reviewed its merits nonetheless. The IJ found the untimeliness was due solely to the incompetence of Njoroge's counsel, qualifying her for

an exception to the typical 1-year deadline for application. *See* 8 C.F.R. § 1208.4(a)(2)(i)(B). In July 2004, Njoroge was charged with removability and served with a notice to appear before an IJ. In April 2005, she appeared, admitted the allegations, and conceded removability. Two months later, she filed a second application for asylum, which differed substantially from her first. The second application listed several events that her first application had not, and included the names of her children and a disturbing account of her son's death.

Njoroge claimed in her second application that, in August, 1996, four members of Kenya's Mungiki group—the country's largest criminal organization—came to her house and asked her to join them. Njoroge claimed that she refused, and that the men became angry and told her they would return. One night, the following month, approximately 15 to 20 people came to her home, broke down the door, stole several pieces of furniture, and burned down the house. She claimed that she either ran, or was thrown, out of the house, and hid with her two children in the woods nearby. She stated that the men ransacking her house also killed two of her neighbors that night. After this incident, she said, her other neighbors became hostile toward her, blaming her for the deaths.

Njoroge also claimed that on Christmas Day 1996, while she and her children were on their way home from church, a person grabbed the children and kidnaped them. At the time of this incident, according to the copies of the children's birth certificates that Njoroge submitted, her children would have been 11 and 20 years old. She claimed she never saw either of them alive again. She also claimed that she told the police about the kidnaping, but that instead of helping, they twice asked her to come to the police station where they beat her repeatedly, accused her of being a Mungiki and, at one point, forced her to stand on a hot metal rod, which branded and disfigured her

right foot. At her hearing before the IJ, Njoroge was not asked, nor did she offer, to show the court evidence of any injury to her foot.

In her second application, Njoroge also claimed that in 1997, she discovered the dead body of her son on a road after he had been pushed out of a moving bus and, presumably, hit by a car. She claimed the Mungiki were responsible for his death and must have chosen the location of the killing specifically so that she would discover the body on her way to work. Njoroge further claimed she worked for Kenya's ministry of finance until she either was laid off, or took early retirement, in 2000. It is undisputed that she receives a pension from the Kenyan government related to that job, and that she was issued a passport in 2000.

After reviewing both applications and hearing Njoroge's testimony, the IJ determined she was not credible. The IJ noted that Njoroge's two applications and her testimony differed from each other in several respects, and that her story at trial lacked corroboration. The IJ also noted a lack of authentication for most of her proffered documents, including her children's birth certificates and her son's death certificate. Finding that Njoroge had "not demonstrated a well-founded fear of future persecution" or shown that "it is more likely than not she would be tortured upon her return to today's Kenya[,]" the IJ denied her claims.

The BIA agreed, dismissing Njoroge's appeal and denying a motion for remand based on ineffective assistance of counsel. This petition followed.

## II.

### A.

To be eligible for asylum, Njoroge must demonstrate that she "is unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A). To obtain withholding of removal, Njoroge must demonstrate "that there is a clear probability that [s]he will be subject to persecution if forced to return to the country of removal." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009), citing 8 U.S.C. § 1231(b)(3)(a)). To obtain protection under the CAT, Njoroge must show that it is "more likely than not that she will be tortured" by or "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" upon her removal. 8 C.F.R. §§ 1208.16(c)(2); 1208.18(a)(1).

An adverse-credibility determination normally precludes the applicant from making any of these showings. *Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004). We review an adverse-credibility determination for substantial evidence, *id.*, and will uphold it "unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B). Such a determination must be based on matters going to the "heart of an asylum applicant's claim, not based on an irrelevant inconsistency." *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) (internal quotation marks omitted). Because the BIA issued its own opinion upholding the IJ's adverse-credibility finding on various grounds, we review that opinion, and not the IJ decision. *Koulibaly*

*v. Mukasey,* 541 F.3d 613, 619 (6th Cir. 2008). "Unless 'any reasonable adjudicator would be compelled to conclude to the contrary,' the BIA's findings of fact are 'conclusive.'" *Id.*

B.

Njoroge argues that the BIA's adverse-credibility finding was not supported by substantial evidence. She contends that the inconsistencies between her two applications and her testimony were minor, and that she adequately explained the reasons for these differences.

But the inconsistencies cited by the BIA were not minor. In her first application, for example, Njoroge did not allege that she had found her son lying dead in the street, having been killed violently and placed deliberately in her path, as she now alleges. Njoroge's first application likewise contains no reference to the late-night burning of her home, her flight into the woods with her children, and the coincident murder of her neighbors while the Mungiki ransacked her house.

The BIA also noted inconsistencies concerning the duration of Njoroge's detention in police custody. Her first application asserts she spent "hours" in custody, while her second application and testimony lengthen the time to "days." This discrepancy likewise is not minor, and suggests that Njoroge embellished her story as her case progressed. These inconsistencies go to the heart of Njoroge's claims, and, taken together, provide substantial evidence in support of the BIA's adverse credibility determination. And that determination effectively prevents Njoroge from meeting her burdens of proof. We therefore deny her petition as to her claims for asylum, withholding of removal, and relief under the CAT.

C.

Njoroge also claims she received ineffective assistance of counsel at the IJ hearing. We review the BIA's denial of her motion on this ground for an abuse of discretion. *Fang Huang v. Mukasey*, 523 F.3d 640, 654 (6th Cir. 2008). To bring an ineffective-assistance claim in removal proceedings, "a complaint [must have] been filed with appropriate disciplinary authorities regarding [the ineffective] representation, and if not, [the claim must reflect] why not[.]" *Pepaj v. Mukasey*, 509 F.3d 725, 727 (6th Cir. 2007). An applicant who does not comply with this requirement "forfeits her ineffective-assistance-of-counsel claim." *Id*.

Njoroge did not file such a complaint here. Her only explanation for this omission was that her trial attorney was "very busy and probably did not have more time or resources to spend on [her] case." That is not a sufficient explanation for failing to file a complaint; and the BIA thus did not abuse its discretion in rejecting it.

D.

Finally, Njoroge claims the IJ was biased against her, in violation of her Fifth Amendment right to due process. We review the BIA's rejection of this claim *de novo*. *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005). We have carefully reviewed the transcript of the hearing before the IJ, and see no basis for this claim.

For these reasons, we deny Njoroge's petition for review.