**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0803n.06

Nos. 10-3625, 11-3317

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jul 24, 2012*
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ALEXANDER ALEXANDROVITCH ARESTOV, | ) ) | |
| | ) | ON PETITION FOR REVIEW |
| **Petitioner,** | ) | FROM A FINAL ORDER OF |
| | ) | THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., United States | ) | |
| Attorney General, | ) | **O P I N I O N** |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

Before:  MOORE, WHITE, and LUCERO,[*] Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Petitioner Alexander Alexandrovitch Arestov petitions this court for review from a final order of the Board of Immigration Appeals ("BIA").  The BIA dismissed Arestov's appeal of an immigration judge's ("IJ") order of removal, which denied Arestov's requests for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the Convention Against Torture ("CAT"), all of which were based on Arestov's asserted fear of torture or persecution in Russia on account of his severe schizophrenia.  Although Arestov's case is sympathetic, because of jurisdictional constraints and Arestov's inability to show that he is entitled to relief as a matter of law, we must **DENY** Arestov's petition for review.

---

[*]The Honorable Carlos F. Lucero, Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

**I. BACKGROUND**

Arestov is a Russian citizen and native who was admitted to the United States in June 2001, when he was twelve years old. After a brief period of absence following a voluntary departure, he was readmitted as an immigrant and lawful permanent resident in March 2004. On September 15, 2009, the Department of Homeland Security ("DHS") issued a Notice to Appear that charged Arestov with removability based on a number of criminal convictions, including receiving and concealing stolen property from a motor vehicle, possession of a controlled substance, resisting and assaulting a police officer, breaking and entering a vehicle to steal less than $200 worth of property, and domestic violence against his mother.

Although Arestov contested removability, DHS submitted documentation to support each of the convictions. The IJ thus determined that clear and convincing evidence supported Arestov's removability under INA § 237(a)(2)(A)(i)–(ii), 8 U.S.C. § 1227(a)(2)(A)(i)–(ii), which permits removal for crimes involving moral turpitude; INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), which permits removal for most convictions related to controlled substances; and INA § 237 (a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E)(i), which permits removal for convictions involving crimes of domestic violence.

At the removal hearing, testimony established that, in 2009, Arestov was diagnosed with severe disorganized-type schizophrenia. Although the official diagnosis did not come until a few years after Arestov arrived in the United States, a psychiatrist at the removal hearing testified to his belief that the disease began progressing in 2004. Arestov's asylum application detailed a vivid fear

2

that, as a result of his mental illness, Arestov would experience "physical and mental abuse and torture from people and [the] Government of Russia, . . . be homeless and hungry, and end up either dying somewhere on the streets, or taken to a mental hospital where [he would] be subjected to drug experiments, . . . forced sterilization, . . . [or have his] organs . . . taken out and sold for transplantation." Administrative Record ("A.R.") at 488 (Asylum App. at 5). But when asked at the hearing to describe his fears, Arestov responded: "I'm afraid of getting good, getting clothes, getting an apartment and a job, communicating, and getting anywhere in life, really. But, at the same time, there is possibility. I might just get lucky, you know?" A.R. at 211 (Removal Hr'g Tr. at 47). Along these lines, Arestov speculated that he might have difficulty finding employment in Russia, but indicated that he had not looked into applying for any jobs up to that point. He expressed some uncertainty as to whether he would be able to locate and self-administer his medications.

Other evidence before the IJ presented a mixed view of the current situation in Russia with respect to mental-health patients. Testimony by Arestov's mother, who at one point worked in Russia as a forensic pathologist, supported the fears stated in the asylum application. She expressed concern that Arestov would be homeless and therefore picked up for medical experimentation or used for organ transplantation. She also noted that the health-care system in Russia is government controlled and unfair to mental patients. The documentary evidence, on the other hand, painted a picture that was much less bleak. One journal article noted that there are some differences in the treatment approaches and medications used for schizophrenia in Russia as compared with the United States, but determined that the options in Russia generally were equally effective. Another article,

3

while noting increasing problems with Russia's mental-health system, identified the major problems as involving deficient funding, drug shortages, and corruption. The article did not mention the types of abuses cited by Arestov's mother or his asylum application, such as drug experimentation or forced sterilization. Even the U.N. Human Rights report, though recognizing significant discrimination issues, reports of abuse against children with disabilities, and poor conditions in adult facilities, did not do much to substantiate Arestov's claim.

Turning first to Arestov's request for asylum, the IJ noted Arestov's 2004 entry into the United States and concluded that his 2009 asylum application was untimely. Furthermore, according to the IJ, the evidence was insufficient to establish that the failure to apply for asylum within one year was due to an extraordinary circumstance or changed country conditions. In considering the existence of extraordinary circumstances, the IJ looked only at whether the evidence was sufficient to establish that the onset of mental illness was early enough to have tolled the one-year requirement. After concluding that the evidence was insufficient to support such a conclusion, the IJ denied asylum on timeliness grounds.

The IJ then considered the merits of Arestov's requests for withholding of removal under the INA and protection under the CAT. Although the IJ determined that Arestov had testified credibly, she noted that only a small portion of his testimony related to his fears of persecution should he be returned to Russia. These inconsistencies between Arestov's testimony and the fears presented in his application caused his credibility to suffer marginally but were not dispositive to his claim. The IJ thus went on to consider whether Arestov belonged to a protected group under the INA, ultimately

4

rejecting the notion that Arestov belonged to a particular social group consisting of Russians with severe mental illness. Noting evidence in the record suggesting that medications for schizophrenia were different, but equally effective, the IJ also concluded that Arestov had failed to demonstrate persecution toward schizophrenia patients in Russia or any probability that he would suffer physical or mental torture as a result of his identity. As further support for her conclusion, the IJ observed that Arestov's father lived with schizophrenia in Russia, and no evidence suggested that he had been harmed or persecuted in any way.

In an order dated April 23, 2010, the BIA dismissed Arestov's appeal. As to the asylum claim, the BIA noted only that Arestov had not challenged the IJ's timeliness determination. It then proceeded to the merits of Arestov's claims for withholding of removal under the INA and the CAT.[1] With respect to those issues, the BIA found "no reason to disturb the Immigration Judge's decision denying [Arestov's] applications for relief and protection." A.R. at 4 (BIA Order at 2). The BIA agreed that "mentally ill Russians" was "too broad and insufficiently cohesive to constitute a particular social group" under the INA. *Id.* Furthermore, the BIA concluded that even if it were a cognizable group, Arestov had not shown any likelihood of persecution on account of his mental illness. To the contrary, according to the BIA, materials in the record supported reforms in the psychiatric system that provided for humane patient treatment, appropriate treatment options, and access to equally effective medication. Finally, the BIA determined that Arestov "ha[d] not shown

---

[1]A review of the brief submitted to the BIA demonstrates that although Arestov attempted to reargue the merits of his asylum claim, he did not challenge the IJ's determination with respect to timeliness.

5

a likelihood of future torture in Russia on any basis," thus rendering him ineligible for relief under the CAT. *Id.* On May 19, 2010, Arestov filed a petition for review of the BIA's final order dismissing his appeal of the IJ's removal order. Petition for Review, *Arestov v. Holder*, No. 10-3625 (6th Cir. May 19, 2010).

On December 15, 2010, Arestov filed with the BIA an untimely motion to reopen based on changed country conditions. The motion offered an updated mental-health evaluation and purported to present new evidence concerning persecution and human-rights abuses against mentally ill patients in Russia. Although many of the materials were similar to those submitted during the removal proceedings—materials that detailed systemic shortcomings but fell short of demonstrating widespread intentional abuse—a 2009 article did provide accounts of inhuman and degrading treatment that could feasibly constitute persecution. That article, which was published prior to Arestov's removal hearing, appears to be the only piece of documentary evidence that directly supports his claims.

In an order filed on March 2, 2011, the BIA denied the motion to reopen. In doing so, the BIA observed that much of the evidence attached to Arestov's motion, including the 2009 article, "could have been discovered and presented at the prior hearing, as the reports pre-date the hearing." Supplemental Administrative Record ("S.A.R.") at 2 (BIA Order at 1). The BIA further determined that even if it "consider[ed] that evidence in combination with the other evidence submitted with the motion, it does not demonstrate that conditions have materially changed in Russia with regard to the treatment of individuals with mental disorders since [Arestov's] 2010 hearing." *Id.* Thus, the BIA

6

determined that the changed-country-conditions exception to the 90-day time limit for motions to reopen did not apply. The BIA further stated that because Arestov had already been removed, it would not exercise its discretion to reopen his case sua sponte. On March 29, 2011, Arestov filed a separate petition for review of the BIA's order denying his motion to reopen. Petition for Review, *Arestov v. Holder*, No. 11-3317 (6th Cir. Mar. 29, 2011). This petition was consolidated with Arestov's earlier petition in case number 10-3625.

## II. ANALYSIS

### A. Jurisdiction

We first must address the limited scope of our jurisdiction over this appeal. As a general matter, our jurisdiction over removal orders against criminal aliens is quite narrow. In particular, we lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D)." 8 U.S.C. § 1252(a)(2)(C). Although the statute confers limited jurisdiction to consider "constitutional claims or questions of law," *id.* § 1252(a)(2)(D), we may not consider the IJ's or the BIA's factual determinations underlying the removal order, *see Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008).

Arestov does not challenge any of the grounds for removability that the IJ determined by clear and convincing evidence to exist.[2] These grounds included two crimes involving moral

---

[2]Some evidence in the administrative record suggests that at the time of the removal hearing, Arestov was attempting to reopen these convictions and that two had been vacated. At the January 19, 2010, removal hearing, however, Arestov's attorney indicated that none of the convictions had

turpitude under 8 U.S.C. § 1227(a)(2)(A)(i)–(ii), and one conviction for possession of a controlled

substance under 8 U.S.C. § 1227(a)(2)(B)(i), all of which trigger the jurisdictional bar mandated in

8 U.S.C. § 1252(a)(2)(C).[3] Thus, our jurisdiction over this appeal is limited to constitutional claims

and questions of law.

The issue then becomes whether Arestov has asserted factual or legal challenges to the BIA's

determinations in this case. Our cases have identified the division between the two as follows. On

the one hand, "whether the BIA used the correct standard in reviewing the IJ's decision and whether

it assigned to [the petitioner] the correct burden of proof" are examples of legal questions that are

subject to review. *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006). The same is true for matters

involving the BIA's construction of a particular statute. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748

(6th Cir. 2006). On the other hand, "whether the BIA correctly considered, interpreted, and weighed

the evidence presented" does not present a question of law or a constitutional issue, and therefore

falls outside the scope of our review. *Tran*, 447 F.3d at 943 (citing *Hamid v. Gonzales*, 417 F.3d 642

(7th Cir. 2005)). Likewise, claims that at bottom rely only "on contesting factual determinations

'rather than on statutory construction or a constitutional claim," including claims that an IJ failed to

---

been vacated. It is not clear from the record whether any further action was taken to clear these convictions and, correspondingly, whether such action would have impacted the grounds for removal. The government in its brief pointed out Arestov's counsel's concession that none of the convictions had been vacated, an assertion that Arestov does not challenge.

[3]Although Arestov's domestic-violence conviction rendered him removable under 8 U.S.C. § 1227(a)(2)(E)(i), offenses under that subsection of § 1227 are not included in the list of offenses that implicate the jurisdictional limitations established in 8 U.S.C. § 1252(a)(2)(C).

emphasize certain factors in a petitioner's case, also are not subject to review. *Ettienne v. Holder*, 659 F.3d 513, 518 (6th Cir. 2011).

## B. Withholding of Removal Under the INA and Relief Under the CAT

To be eligible for withholding of removal under the INA, Arestov must demonstrate "a clear probability, that is, that it is more likely than not, that [he] would be subject to persecution" based on one of five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Almuhtaseb*, 453 F.3d at 749 (internal quotation marks omitted). Eligibility for relief under the CAT, on the other hand, requires a showing that "it is more likely than not" that Arestov would be subjected to torture if returned to Russia. *Id.* at 751 (internal quotation marks omitted). Although relief under the CAT is possible even if the IJ denies a claim for withholding of removal under the INA and need not be based on one of the five protected groups, Arestov nevertheless must demonstrate a particularized threat of cruel or inhumane treatment that rises to the level of torture. *Mapouya v. Gonzales*, 487 F.3d 396, 414 (6th Cir. 2007).

Arestov maintains that (1) the testimony was sufficient to establish a likelihood of persecution on the basis of his mental illness, Pet'r's Principal Br. at 25–27; (2) the evidence was adequate to support Arestov's fear of torture and his application for relief under the CAT, *id.* at 30–32; and (3) the IJ made a "convoluted" and therefore erroneous credibility determination that the BIA failed to address, *id.* at 27–30. When the BIA reviews and affirms the IJ's decision in a separate opinion, we review the BIA's order as the final agency action. *Khalili v. Holder*, 557 F.3d 429, 435

9

(6th Cir. 2009). To the extent that the BIA adopted the IJ's reasoning, however, we also review the IJ's decision. *Id.*

Under normal circumstances, we review any factual findings by the IJ and the BIA for substantial evidence. *Id.* Accordingly, "[t]o reverse the BIA's determination, we must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Almuhtaseb*, 453 F.3d at 749 (internal quotation marks omitted); *see also Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008) (noting that the substantial-evidence standard does not permit reversal of the BIA's or the IJ's determination unless the record, considered as a whole, compels a contrary result). But, as we noted above, our review is limited in this case. In order to determine the scope of our review, we first "must consider what type of analysis would be necessary to evaluate the claim on its merits." *Ettienne*, 659 F.3d at 517. Only if that analysis requires resolution of legal or constitutional questions are Arestov's claims subject to review. *See id.*

Arestov's first argument—whether the evidence supports Arestov's reasonable fear of persecution—is based in large part on fact-based challenges over which we lack jurisdiction under 8 U.S.C. § 1252(a)(2)(C), (D). To the extent that Arestov challenges the credibility determinations and weighing of the evidence, these arguments present questions of fact rather than the application of a particular legal standard, and thus are not subject to review. *Johns v. Holder*, 678 F.3d 404, 406 (6th Cir. 2012) (noting, in the context of hardship waivers over which jurisdiction is similarly limited to constitutional claims and questions of law, that "we do not have jurisdiction to review the Board's assessment of the weight or credibility of the evidence").

The same is generally true of Arestov's claim that the BIA erred in determining that he failed to establish a likelihood of torture under the CAT. *Tran*, 447 F.3d at 943 (noting that review of "whether the BIA correctly considered, interpreted, and weighed the evidence presented" with respect to a petitioner's request for relief under the CAT is barred under § 1252(a)(2)(D) (citing *Hamid v. Gonzales*, 417 F.3d 642 (7th Cir. 2005))); *see also Magasouba v. Mukasey*, 543 F.3d 13, 16 (1st Cir. 2008) (concluding that consideration of "fact-based challenges to the withholding and CAT rulings," such as "the BIA's factual findings as to credibility, evidentiary weight, and satisfaction of a correctly framed burden of proof" are beyond the court's limited jurisdiction under § 1252(a)(2)(C) (internal quotation marks omitted)).[4] Despite Arestov's attempts to frame his CAT claim as involving a legal issue concerning the adequacy of the IJ's and BIA's analysis of the claim, at bottom, he simply challenges the agency's weighing of the evidence. Contrary to Arestov's claim, the BIA's rejection of his CAT claim was not based on the IJ's purported adverse credibility finding or on a legal error in distinguishing the applicable standards for relief under the INA as opposed to under the CAT. Instead, the BIA and the IJ both determined that the evidence submitted did not support a likelihood of torture.

---

[4]Arestov also contends that the BIA erred in determining that severely mentally ill Russians do not constitute a particular social group. Although Arestov's claim with respect to what constitutes a particular social group presents a question of law over which we do have jurisdiction, we do not consider it because his claim is foreclosed by the IJ's factual determination that he did not demonstrate the requisite likelihood of persecution. *See generally Mulla v. Holder*, 462 F. App'x 592, 594–95 (6th Cir. 2012) (unpublished opinion).

11

Although the above precedents may not entirely eliminate our jurisdiction to consider the ultimate question whether the BIA's determination is based on substantial evidence, *see Johns*, 678 F.3d at 407, to the extent that we do have jurisdiction to review Arestov's claims for relief under the INA and the CAT, we cannot conclude that the BIA's decision was in error. While testimony from Arestov's mother supported his fear of future persecution, the other testimony and documentary evidence does not compel the conclusion that it is more likely than not that Arestov would be persecuted upon his return. In some instances, the evidence in fact supports the opposite conclusion. Indeed, even Arestov's own testimony did not support his claims for relief. Given the lack of evidentiary support for Arestov's claims, we cannot say that the IJ's determination was unreasonable. To establish a well-founded fear of future persecution, "an applicant cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Mapouya*, 487 F.3d at 412 (internal quotation marks omitted). Speculative claims about drug experimentation or organ harvesting were effectively all that Arestov presented at the merits hearing.

Arestov's attempt to reframe his challenge to the IJ's credibility determination—which generally qualifies as a finding of fact, *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006)—is similarly unpersuasive. That the BIA did not address the IJ's credibility determination does not alone give rise to a reviewable question of law or warrant remand. Instead, we have noted that "when an IJ or the BIA expresses suspicion about an applicant's lack of credibility but the BIA fails to make an explicit adverse determination and instead denies relief on some other basis, we will

assume that the applicant was credible in order to review the actual grounds for the ruling." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1150 (6th Cir. 2010) (internal quotation marks omitted). Here, neither the IJ's nor the BIA's conclusion hinged on the credibility determination, and, in light of the scant additional evidence presented to support Arestov's requests for relief, the BIA's failure to make an explicit credibility determination did not, as Arestov suggests, amount to legal error. Even if the BIA had unequivocally made a favorable credibility determination, Arestov still has not demonstrated that he is entitled to relief.

## C. Arestov's Asylum Application

Arestov also argues that the IJ erred in denying his asylum application on timeliness grounds and that the BIA erred in concluding that he had not challenged the timeliness determination on appeal. With respect to the merits of his timeliness argument, Arestov maintains that his asylum application meets the "extraordinary circumstances" exception to the one-year filing requirement for asylum applications on two grounds: (1) he was a lawful permanent resident prior to receiving the notice to appear and filed the asylum application only a few months after receiving the notice, entitling him to consideration under 8 C.F.R. § 208.4(a)(5)(iv), and (2) he began suffering from either a "serious illness or mental . . . disability" or a "[l]egal disability" within a year of his arrival, 8 C.F.R. §208.4(a)(5)(i), (ii). Pet'r's Principal Br. at 16–18. The IJ rejected the second ground but did not acknowledge or analyze the first.

As a general matter, we lack jurisdiction to review a determination that an asylum application was untimely unless the challenge raises a constitutional question or other question of law.

13

*Almuhtaseb*, 453 F.3d at 748. When the IJ or BIA makes a legal error in evaluating timeliness, the question becomes one of due process and therefore falls within our limited jurisdiction. *Gjyzi v. Ashcroft*, 386 F.3d 710, 714 (6th Cir. 2004). To prevail on a due-process claim, Arestov must demonstrate both error "such as might have led to a denial of justice" and the existence of prejudice. *Hachem v. Holder*, 656 F.3d 430, 435 (6th Cir. 2011) (internal quotation marks omitted).

The regulations provide that an extraordinary circumstance "may excuse the failure to file within the 1–year period as long as the alien filed the application within a reasonable period given those circumstances." 8 C.F.R. § 208.4(a)(5). One of the listed circumstances is that "[t]he applicant maintained Temporary Protected Status, lawful immigrant or nonimmigrant status, or was given parole, until a reasonable period before the filing of the asylum application." *Id.* § 208.4(a)(5)(iv). In response to the question concerning why the application for asylum was filed more than one year after arriving in the United States, Arestov directly referenced the requirements of this provision, stating: "I am a Lawful Permanent Resident who is in Immigration Court proceedings since September 15, 2009. I am filing my asylum application within a reasonable period, at first date designated by the Immigration Judge." A.R. at 516. Because Arestov facially appears to have a strong argument for demonstrating an applicable extraordinary circumstance, the IJ's utter failure to consider it likely constitutes the type of prejudicial error that would, under our precedents, state a colorable due-process claim.

Even if, however, we were to find that the IJ's failure to consider Arestov's immigration status states a viable constitutional claim, we nevertheless lack jurisdiction because Arestov failed

to raise the defects in the IJ's decision in his appeal to the BIA. "[B]efore raising an immigration issue in federal court, a petitioner must normally present all reviewable issues to the BIA." *Khalili*, 557 F.3d at 432–33. This requirement is statutory rather than prudential, *see* 8 U.S.C. § 1252(d)(1) (permitting review of "a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"), and accordingly places a bona fide limit on our jurisdiction, *see Gor v. Holder*, 607 F.3d 180, 185 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 3058 (2011); *Ramani v. Ashcroft*, 378 F.3d 554, 560–61 (6th Cir. 2004); *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005).

Even generously construing Arestov's filings before the BIA, we cannot conclude that he raised the timeliness issue before the BIA.[5] Although it is true, as Arestov asserts, that his brief before the BIA repeatedly mentions the word "asylum," the discussion involves only the merits of Arestov's asylum claim and never once mentions the IJ's determination as to the timeliness of Arestov's asylum application. A properly raised claim before the BIA requires that an issue was not only mentioned but also that it was "reasonably developed in the petitioner's brief to the BIA." *Khalili*, 557 F.3d at 433. Arestov's brief did not meet this standard. Thus, because Arestov's timeliness argument could have been presented to the BIA but was not properly raised, we are unable

---

[5]The government contends that the timeliness issue is moot on account of the fact that the BIA considered Arestov's asylum claim on the merits. The BIA's decision, however, does no more than observe that Arestov failed to challenge the IJ's timeliness determination on appeal before moving on to the merits of his request for withholding of removal. The portion of the IJ's decision that purportedly addresses the merits of Arestov's asylum claim, upon closer reading, evaluates only Arestov's eligibility for withholding of removal. *See* A.R. at 22–24 (IJ Decision at 16–18). We therefore do not agree that Arestov's timeliness argument can be decided on mootness grounds.

to review it. *See Diallo v. Holder*, 364 F. App'x 992, 996 (6th Cir. 2010) (applying § 1252(d)(1) to a constitutional or statutory claim relating to the timeliness of the petitioner's asylum claim).

## D. Arestov's Motion to Reopen

Arestov separately challenges the BIA's order denying his motion to reopen. In denying Arestov's motion, the BIA reasoned that Arestov had failed to establish changed country conditions to excuse his untimely filing. The BIA also declined to exercise its discretion to reopen Arestov's case sua sponte. Arestov purports to challenge all aspects of the ruling, but focuses his argument on the BIA's refusal to grant the motion sua sponte and on the assertion that the BIA abused its discretion by denying Arestov's stay of removal because that action "stripp[ed the BIA] of jurisdiction" and "prevented the BIA from exercising independent judgment and discretion on the Motion to Reopen sua sponte." Pet'r's Second Br. at 31. Arestov also contends that the BIA erred in failing to consider his claim for equitable tolling arising from ineffective assistance of counsel. We address each of these arguments in turn.

Initially, there is some question whether Arestov has waived his challenge to the BIA's conclusion that he did not meet the changed-country-conditions exception to the filing deadline for a motion to reopen. Even assuming that Arestov has properly raised the argument, however, his convictions for crimes involving moral turpitude and for possession of a controlled substance mandate application of 8 U.S.C. § 1252(a)(2)(C) and (D), which again precludes our review. *Pepaj v. Mukasey*, 509 F.3d 725, 728 (6th Cir. 2007). In *Pepaj v. Mukasey*, we specifically addressed the application of those provisions to a motion to reopen alleging changed country conditions. *Id.*

16

There, we concluded that because such claims involve a "'predominantly factual determination'" and hinge on "'contesting [such] factual determinations rather than on statutory construction or a constitutional claim,'" we lack jurisdiction to consider them. *Id.* (quoting *Almuhtaseb*, 453 F.3d at 748–49).

Even if our jurisdiction were not circumscribed in this case, Arestov's claim would fail. Our normal review of this issue is for abuse of discretion, which looks only to "whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006) (alterations in original) (internal quotation marks omitted).

Arestov maintains that the BIA erred by considering changed country conditions only as of Arestov's 2010 hearing instead of considering the relevant changes from the 2007 date at which Arestov's prior counsel allegedly ceased to conduct its pre-removal-hearing research. Arestov, however, cites no authority for the proposition that the BIA could have done so, and the section of the INA that grants authority to reopen removal proceedings based on changed country conditions appears to foreclose it. In particular, the INA requires that the evidence of such conditions "is material and was *not available and would not have been discovered or presented at the previous hearing*." 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added); *see also* 8 C.F.R. 1003.2(c)(3)(ii). As the BIA pointed out, most of the evidence presented in concert with the motion to reopen predated Arestov's removal hearing and therefore does not qualify as "new" under the statute or regulations.

17

Thus, utilizing the 2007 date Arestov suggests would encompass evidence that does not meet the statutory requirements for granting a motion to reopen. *Cf. Bi Feng Liu v. Holder*, 560 F.3d 485, 491 (6th Cir. 2009) (faulting the petitioner for providing numerous materials dated before the IJ issued the removal order and for failing to "present [a] comparison of the country conditions from the time between his removal order in June 2005 and his motion to reopen in December 2006"). Accordingly, we cannot say that the BIA abused its discretion in considering the evidence as applied to the conditions in Russia after Arestov's 2010 hearing.

With respect to the BIA's refusal to exercise its sua sponte authority to grant Arestov's motion to reopen, Arestov contends that the Supreme Court's decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010), controls our result. *Kucana* held that the limitations on judicial review set forth in 8 U.S.C. § 1252(a)(2)(B) apply only to decisions that are made discretionary by statute, and not to grants of discretion to the BIA that are based solely in agency regulations. *Id.* at 831. This facially appears to be in conflict with our prior decisions in *Harchenko v. INS*, 379 F.3d 405, 410–11 (6th Cir. 2004), and *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008), both of which concluded that the BIA's refusal to exercise its sua sponte authority to reopen removal hearings—which derives from a regulatory provision, 8 C.F.R. § 1003.2(a)—is not subject to judicial review.

In *Gor v. Holder*, however, we determined that *Kucana* merely called into doubt the reasoning in those prior cases rather than overruling them. 607 F.3d at 188. Specifically, we concluded that

> *Kucana* cannot fairly be read as overruling [*Harchenko* and *Barry*], since the
> Supreme Court specifically expressed 'no opinion on whether federal courts may

18

>review [BIA refusals] to reopen removal proceedings *sua sponte*.' 130 S. Ct. at 839
>n.18. Therefore, we are constrained to hold that we lack jurisdiction to review the
>BIA's denial of the petitioner's motion to reopen *sua sponte*.

*Id.* (second alteration in original). Although we express no opinion on whether *Gor* was correctly

decided, we are bound to dismiss Arestov's challenge for lack of jurisdiction.[6]

Arestov's objection to the BIA's denial of his motion to stay his removal mischaracterizes

the result of that decision. Although we have held that the government may not execute a removal

order in order to divest itself or this court of jurisdiction over appeals or motions to reopen, *Pruidze*

*v. Holder*, 632 F.3d 234, 239–40 (6th Cir. 2011) (holding that the BIA could not "improperly deny

[a petitioner's] motion on the invalid ground that it does not have jurisdiction over motions to reopen

filed by aliens abroad"); *Madrigal v. Holder*, 572 F.3d 239, 245 (6th Cir. 2009), that is not what the

BIA did here. Instead, the BIA considered the merits of the motion to reopen; concluded that the

motion was untimely; considered whether Arestov had presented evidence of changed circumstances;

---

[6]As part of his challenge to the BIA's denial of the motion to reopen, Arestov requests that the court grant en banc review of a purported conflict in our cases regarding judicial review of the BIA's discretion to grant such motions sua sponte. Arestov maintains that the interpretation of *Kucana* in *Gor* conflicts with the analysis in our subsequent decision in *Dugboe v. Holder*, 644 F.3d 462, 469 (6th Cir. 2011). First, we note that our court has declined to grant an initial hearing en banc in this case. *Arestov v. Holder*, No. 11-3317 (6th Cir. Aug. 22, 2011) (unpublished order). More importantly, however, we do not believe *Gor* and *Dugboe* are irreconcilable. Unlike *Gor*, *Dugboe* involved our jurisdiction over an IJ's order denying a venue-transfer motion. 644 F.3d at 469. Applying *Kucana*, we concluded that we had jurisdiction over the order because the IJ's discretion was granted by regulation rather than through the INA. *Id.* For the reasons discussed above, we determined in *Gor* that, due to preexisting Sixth Circuit precedent, the same result did not apply to cases involving the BIA's exercise of its sua sponte authority to grant a motion to reopen. *Gor*, 607 F.3d at 188. Because only *Gor* involved the statutory and regulatory provisions at issue here, that case rather than *Dugboe* governs our review. Arestov is free, of course, to seek rehearing en banc.

and then declined to exercise its sua sponte authority to reopen Arestov's appeal. Specifically, the BIA asserted that, under the circumstances of Arestov's case, it would "not exercise [its] discretion to reopen sua sponte"; the BIA did not state that it lacked jurisdiction to do so. *Id.* Because the BIA decided Arestov's motion to reopen on the merits rather than relying on improper jurisdictional limitations, Arestov cannot prevail on his argument that the BIA abused its discretion by denying his stay of removal so as to deprive itself of jurisdiction over his motion to reopen.

Finally, Arestov contends that the case should be remanded because the BIA failed to consider his claim for equitable tolling based on ineffective assistance of counsel during the removal proceedings. Arestov, however, did not actually raise this claim in the motion to reopen before the BIA. Although Arestov criticized his former counsel's inexperience in an attempt to persuade the BIA to exercise its discretion to reopen the removal proceedings sua sponte, Arestov made no attempt to comply with the procedural requirements for ineffective-assistance-of-counsel claims as set forth in *Lozada*, 19 I & N Dec. 637 (BIA 1988). "An alien who fails to comply with *Lozada*'s requirements forfeits [his] ineffective-assistance-of-counsel claim." *Pepaj*, 509 F.3d at 727. Because the claim was not properly raised below, we will not consider it here. *Khalili*, 557 F.3d at 432–33.

## III. CONCLUSION

For the foregoing reasons, we **DENY** Arestov's petition for review.