NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0314n.06

No. 17-4073

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 26, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HATIM JAMIL ZAKAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE:    KEITH, ROGERS, and BUSH, Circuit Judges.

ROGERS, Circuit Judge. Hatim Zakar was born in Iraq but lawfully admitted to the United States at an early age. He was convicted in a Michigan court of a serious drug offense, for which he served nineteen years in prison. After he was paroled, Zakar stipulated to his removability and was ordered removed. Zakar now seeks to reopen his removal proceedings, arguing that his stipulation to his removability was involuntary and that conditions in Iraq have changed such that there is now a clear probability that he will face persecution because of his Chaldean Christian religion. But due to Zakar's conviction, we are without jurisdiction to review his challenges to the Board of Immigration Appeals' ("BIA") factual findings regarding both his prima facie eligibility for deferral of removal under the Convention Against Torture ("CAT") and whether country conditions in Iraq had changed. Also, we are precluded from reviewing the BIA's decision to decline to exercise its sua sponte authority to reopen Zakar's case.

Hatim Zakar is a fifty-four-year-old native and citizen of Iraq, who immigrated to the United States in 1970, when he and his parents were granted lawful-permanent-resident status. In 1991, he was convicted in Michigan of conspiring to deliver or manufacture more than 650 grams of cocaine, which at the time carried a mandatory-minimum sentence of life without parole. After a change in the law, Zakar was paroled in 2009, but he attracted the attention of Immigration and Customs Enforcement, who alleged that Zakar was removable due to his conviction.

Zakar initially stipulated to his removability, but it was not clear whether Zakar feared returning to Iraq: the stipulation said that Zakar had "no fear of returning to [Iraq]," but Zakar's supplied biographical information said that he had "fear of being harmed and persecuted if returned to Iraq." The Immigration Judge ("IJ") therefore did not accept the stipulation and set the case for a master-calendar hearing. Zakar appeared at that hearing without counsel and insisted on being removed from the United States, saying, "I am afraid to go back to Iraq, but your honor, I've been locked up [in state prison] 19 years, and I just don't want to be locked up no more," and, "I really don't want to get deported, but like I told you, I just want to get out of jail. And if that's what it takes, to deport me, then that's your decision, sir." The IJ accordingly issued a removal order, to which Zakar waived his appellate rights (apparently at least in part because he would have remained in detention pending appeal). Zakar was subsequently released from custody.

Seven years later, in 2016, Zakar filed a motion to reopen his removal proceedings, seeking withholding of removal and also discretionary relief under Section 212(c) of the Immigration and Nationality Act ("INA") (codified at former 8 U.S.C. § 1182(c)). The motion argued that Zakar's stipulating to removal was not voluntary but rather was obtained under duress, and thus the

Immigration Court should exercise its sua sponte authority to reopen his case.[1] He also argued

that country conditions in Iraq had changed, namely the rise of ISIS, such that he should be allowed

to reopen his case. The IJ denied the motion, concluding:

> The Court finds that respondent has sufficiently demonstrated changed country conditions in Iraq. However, respondent is statutorily ineligible for withholding of removal under the Act and for relief under former section 212(c) of the Act [due to his conviction and the length of his incarceration, respectively]. He is also ineligible for deferral of removal under the Torture Convention, because he has not provided even prima facie evidence that he would be tortured by the Iraqi Government or public officials thereof.

The IJ also concluded that "[Zakar's] responses to IJ Newberry [the former IJ who conducted

Zakar's hearing] during his master calendar hearing confirm that respondent heard and understood

all of his rights, and knowingly waived his right to appeal and accepted IJ Newberry's order."

Zakar appealed to the Board of Immigration Appeals. While that appeal was pending

before the BIA, he filed an emergency motion to reopen and to stay his removal with the BIA,

claiming again that he was eligible for relief under Section 212(c), withholding of removal, and

deferral of removal under the Convention Against Torture. The BIA dismissed Zakar's appeal.

First, the BIA concluded that Zakar's removability was not based on the stipulation but rather on

his statements at the hearing, at which Zakar showed that he understood the consequences of his

conceding removability. Next, the BIA concluded that, in any event, Zakar was statutorily

ineligible for withholding of removal because his drug-trafficking conviction constitutes a

"particularly serious crime" under Section 241(b)(3)(B)(ii) (codified at 8 U.S.C.

§ 1231(b)(3)(B)(ii)). Zakar was also ineligible for relief under Section 212(c) (codified at 8 U.S.C.

---

[1] Because this claim is not one based on changed country conditions (or any other exception to the time-and-number limitation), and because the claim was raised in a motion brought far outside the otherwise-applicable ninety-day time limit, it is cognizable only as a request to exercise the BIA's sua sponte authority.

§ 1182(c)), the BIA determined, because he had failed to "meaningfully challenge on appeal the Immigration Judge's conclusion that [he] is ineligible for section 212(c) relief because [he] served 19 years in prison for his aggravated felony conviction." The BIA also concluded that Zakar had not "show[n] that it is more likely than not that he would be tortured in Iraq by or with the acquiescence of a public official or other person acting in an official capacity," as would be required to establish prima facie eligibility for deferral of removal under the CAT. Finally, with respect to Zakar's second, emergency motion to reopen, the BIA concluded that it was barred both because it was too late and because it was a successive motion that relied on the same evidence of changed country conditions as Zakar's first motion, and thus its arguments could have been presented earlier.

Zakar now petitions for review. He argues that the BIA's conclusion that he had not established prima facie eligibility for deferral of removal under the CAT was erroneous, that the BIA improperly applied the time-and-number limits to dismiss his second motion to reopen, and that the BIA erred by declining to exercise its sua sponte authority to reopen his case. None of these arguments warrants our granting his petition.

Zakar's conviction precludes our jurisdiction over most of this case. 8 U.S.C. § 1252(a)(2)(C) provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review any final order of removal against an alien who is *removable by reason of having committed a criminal offense* covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title . . . .

*Id.* (emphasis added). Section 1227(a)(2)(A)(iii) in turn provides that an alien who commits an "aggravated felony" while in the United States is deportable. Section 1101(a)(43) defines "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18),"

§ 1101(a)(43)(B), and also "an attempt or conspiracy to commit an offense described in this paragraph," § 1101(a)(43)(U). Zakar's conviction for conspiring to deliver or manufacture more than 650 grams of cocaine was a controlled-substance offense under those sections. Further, the IJ determined that Zakar's conviction was an aggravated felony, and Zakar has not challenged that finding on appeal.

Moreover, Zakar was "removable by reason of having committed a [covered] criminal offense." 8 U.S.C. § 1252(a)(2)(C). The government originally served Zakar with a Notice to Appear alleging that he was removable because of his conviction, and the IJ subsequently ordered him removed on that basis. In *Ventura-Reyes v. Lynch*, 797 F.3d 348 (6th Cir. 2015), we held that Section 1252(a)(2)(C) means what it says; we explained that "the jurisdictional bar is applied to any order of removal 'against an alien who is *removable* by reason of having committed' a relevant crime." *Id.* at 357–58 (quoting 8 U.S.C. § 1252(a)(2)(C)). We also cited with approval Judge Graber's concurrence in *Pechenkov v. Holder*, 705 F.3d 444 (9th Cir. 2012), which explained, "[T]he applicability of § 1252(a)(2)(C) is a straightforward inquiry: Was the alien charged with removability because of a relevant crime, and did the IJ correctly sustain that charge?" *Id.* at 451–52 (Graber, J., concurring). Thus, under *Ventura-Reyes*, the jurisdictional limitation of Section 1252(a)(2)(C) applies to Zakar's case.

Notwithstanding the above, Section 1252(a)(2)(D) preserves judicial review of "constitutional claims or questions of law," the latter of which we have interpreted to mean questions akin to those of statutory construction. In *Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006), we explained that "[t]he purpose of section 106(a)(1)(A)(iii) is to permit judicial review over those issues that were historically reviewable on habeas[:] *constitutional and statutory-construction questions, not discretionary or factual questions*." *Id.* at 748 (first alteration in

original) (quoting *Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153 (2d Cir. 2006)). But the two main arguments pressed by Zakar are factual, and we therefore lack jurisdiction over them.

Zakar's first argument—that the BIA erred in finding that he did not show that he would more likely than not be tortured upon his return to Iraq, and thus that he did not establish prima facie eligibility for relief under the CAT—is clearly of a factual nature. Our recent published opinion in *Shabo v. Sessions*, No. 17-3881, 2018 WL 2772773 (6th Cir. June 11, 2018), held expressly that and thus controls this case. *Id.* at *2. There we said, "the BIA's alternative holding that Shabo failed to establish a prima facie case of his likely torture is a factual determination that we lack jurisdiction to review." *Id.* We therefore lack jurisdiction to review the BIA's likelihood-of-torture determination.

Section 1252(a)(2)(C) also precludes our jurisdiction over Zakar's second, changed-country-conditions argument. Under 8 U.S.C. § 1229a(c)(7), a movant who shows material and previously unavailable evidence of changed country conditions can file a motion to reopen beyond the otherwise-applicable ninety-day time limit. But here, the BIA concluded that "[Zakar] ha[d] not presented material evidence that was not available and could not have been discovered or presented at the previous hearing." As a result, the BIA determined that the changed-country-conditions exception did not apply and therefore applied the ninety-day limitation to dispose of Zakar's second motion to reopen. Zakar argues on appeal that the BIA's conclusion was erroneous, but that argument necessarily challenges the BIA's factual determination regarding changed country conditions in Iraq, which we are jurisdictionally barred from reviewing. In *Pepaj v. Mukasey*, 509 F.3d 725, 727–28 (6th Cir. 2007), we held that "we have no appellate jurisdiction over [the] factual determination" of whether country conditions have changed. *Id.* at 727–28 (citing *Almuhtaseb*, 453 at 748–49). Here, because Zakar filed his second motion to reopen over

eight years after he was ordered removed, and because Section 1252(a)(2)(C) bars us from revisiting the BIA's determination that country conditions in Iraq had not changed, the BIA's decision that the motion was untimely must stand. And to the extent Zakar argues that the BIA erroneously focused on whether conditions in Iraq had changed between his first and second motions, rather than since his initial hearing in 2009, he has not framed the argument as a question of law over which we would have jurisdiction in accordance with our decision in *Almuhtaseb*, 453 F.3d at 748.

Finally, Zakar's last argument—that the "BIA erred in failing to exercise its sua sponte authority to reopen" his proceedings to consider whether his stipulation of removability was made "unintelligently[] and under duress"—is squarely foreclosed by circuit precedent. In *Harchenko v. INS*, 379 F.3d 405 (6th Cir. 2004), we held that "[t]he decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA," and that there is "no standard by which to judge the agency's exercise of discretion." *Id.* at 410–11. We held that review of the BIA's declining to exercise its sua sponte reopening authority therefore was precluded by the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). *Id.* at 411. More recently, in *Rais v. Holder*, 768 F.3d 453, 460–62 (6th Cir. 2014), we held that *Harchenko* remains good law notwithstanding the Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233 (2010), which dealt with the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B), rather than the APA § 701(a)(2) preclusion of judicial review. Thus, under binding circuit precedent, the BIA's forgoing the exercise of its sua sponte authority is a decision that we cannot review.

The petition for review is dismissed.