RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MUHAMMAD SALMAN RAIS,

　　　　　　　　　　　*Petitioner,*

　　*v.*

ERIC H. HOLDER, JR.,

　　　　　　　　　　　*Respondent.*

No. 13-3639

On Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A079 692 636—Detroit.

Decided and Filed:  September 16, 2014

Before:  BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:**  Marshal E. Hyman, Russell Reid Abrutyn, MARSHAL E. HYMAN & ASSOC.,
PC, Troy, Michigan, for Petitioner.  Kelly J. Walls, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

　　BERNICE BOUIE DONALD, Circuit Judge.  Muhammad Salman Rais, a native and
citizen of Pakistan, is under a final order of removal from the United States.  He has twice moved
the Board of Immigration Appeals (BIA) to reopen removal proceedings against him without

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan,
sitting by designation.

success, requesting that the proceedings be suspended while the United States Citizenship and Immigration Services (USCIS) adjudicates his application for adjustment of status. The BIA denied the first motion on the merits and refused to exercise its *sua sponte* authority to grant the second, which was untimely and number-barred. Rais now petitions for judicial review of the second denial. For the reasons that follow, however, we **DISMISS** the petition for want of jurisdiction.

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.  Context.

The legal context of this case—caught, as it is, between two branches of the federal immigration system—potentially clouds apprehension of the questions that it raises. Accordingly, a brief sketch of that context is in order:

> Our immigration system empowers two different entities to adjudicate an adjustment of status application. Immigration Judges, subject to review by the [BIA], decide adjustment applications for most noncitizens who are in removal proceedings. Applications from all other noncitizens are decided by USCIS. Pursuant to interim regulations adopted by the Executive Office for Immigration Review in 2006, however, . . . [the] adjustment applications [of a small group of 'arriving aliens'] are within USCIS'[s] exclusive jurisdiction, even though these noncitizens are in removal proceedings [before an IJ or the BIA] or have removal orders [pending] against them.[1]
>
> When USCIS denies an application for adjustment of status in a final agency action, the noncitizen typically requests relief in federal district court under the Administrative Procedure Act . . . . But when an Immigration Judge or the [BIA] denies an application in the process of entering a final removal order . . . the noncitizen's only recourse is to ask the [BIA] to reopen or reconsider the matter, or to file a petition for review of the Board's order in a [federal] court of appeals.

*Marrakchi v. Napolitano*, 494 F. App'x 877, 887 (10th Cir. 2012) (Lucero, J., dissenting) (citations omitted) (discussing an issue that "[t]he majority d[id] not reach"). Non-citizens are

---

[1]*Accord Rais v. Holder*, 518 F. App'x 476, 477 (6th Cir. 2013) (per curiam) ("The USCIS has exclusive jurisdiction over applications for adjustment of status by arriving aliens, except in the case of an alien who is renewing an application that he filed prior to departure from the United States on advance parole, which may be presented to an IJ in removal proceedings." (citing *Brito v. Mukasey*, 521 F.3d 160, 166-68 (2d Cir. 2008)).

subject to a ten-year bar on re-entry into the United States if they are found to have been unlawfully present here for more than one year. 8 U.S.C. § 1182(a)(9)(B)(i)(II).

## B.    History.

Against this backdrop, this case presents two discrete claims that a convoluted factual and procedural history similarly threatens to obscure. At an earlier stage of the case, this court briefly recounted much of that history as follows:

> Rais was born in Pakistan in 1975. He entered the United States in 2002 to attend school. Shortly after his arrival, Rais married a United States citizen and applied for adjustment of status to lawful permanent residency. He was convicted of domestic violence against his wife, also in 2002. Rais was granted advance parole,[2] allowing him to leave the United States without abandoning his application for adjustment of status. He was paroled back into this country in 2003. In 2004, [Rais's] application for adjustment of status was denied because [he] and his wife were divorcing. [Rais] married another United States citizen in 2005, and again applied for adjustment of status. That application was denied in 2009 because of [the] domestic violence conviction.[3] Simultaneously, Rais was placed in removal proceedings [in Detroit, Michigan], in which he also attempted to apply for adjustment of status. The IJ [ordered his removal], determin[ing] that she lacked jurisdiction to grant Rais adjustment of status under 8 U.S.C. § 1255 and applicable implementing regulations,[4] and the BIA affirmed [on February

---

[2]"As its name implies, 'advance parole' is simply parole that has been requested and authorized in advance based on an expectation that [an] alien will be presenting himself for inspection without a valid visa in the future." *In re Arrabally*, 25 I. & N. Dec. 771, 777 (BIA 2012) (citing 8 C.F.R. § 212.5(f)). Although aliens may request advance parole from outside of the United States, it is typically sought by aliens who are already within the country and "want[ ] to leave temporarily but fear[ ] that [they] will either be excluded as . . . inadmissible . . . upon return or be deemed to have abandoned a pending application for an immigration benefit." *Id.* (citing *Matter of G-A-C-*, 22 I. & N. Dec. 83, 88 (BIA 1998); 8 C.F.R. §§ 245.2(a)(4)(ii)(A), 1245.2(a)(1)(ii) (2011)). Once the purpose of advance parole has been satisfied, it is terminated. *Id.*

[3]In 2013, the conviction was set aside, and the case against Rais was dismissed with prejudice for want of jurisdiction.

[4]*See supra* note 1. The IJ concluded that Rais was an "arriving alien" over whose immigration status USCIS had exclusive jurisdiction because Rais had last entered the United States on advance parole. Rais had not renewed the application for adjustment of status that he had filed before he left the country, that application having been denied because Rais and his first wife were divorcing. Instead, he filed a new application. Accordingly, the IJ was correct: USCIS had exclusive jurisdiction over Rais's immigration status. *See Rais*, 518 F. App'x at 477. An "arriving alien" is

> [1] an applicant for admission coming or attempting to come into the United States at a port-of-entry, or [2] an alien seeking transit through the United States at a port-of-entry, or [3] an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked.

8 C.F.R. § 1001.1(q). Although aliens who enter the United States through a grant of advance parole need not be designated "arriving aliens" solely by reason of the grant, *id.*, Rais now concedes that USCIS "has exclusive

13, 2012, (A.R. 180, 204-05)]. Meanwhile, Rais had filed another application for adjustment of status with [USCIS], which was also denied in 2012.[5]

*Rais v. Holder*, 518 F. App'x 476, 476 (6th Cir. 2013) (per curiam).[6]

Rais then filed a fourth application for adjustment of status (discounting the request for status adjustment that he directed to the IJ) with USCIS on March 5, 2013, to which he appended nearly one hundred pages of information to evidence his fitness to remain in the United States and to demonstrate the hardship that removal from the country would impose on him and his family. According to that information, Rais and his second wife are both practicing physicians in rural western Michigan; they provide medical care to an underserved population and free medical care to indigent patients; their two children, Rais's mother and three sisters, and the parents and five siblings of Rais's wife all lawfully reside in the United States; and Rais no longer has any family abroad.

Additionally, Rais noted that he has cooperated with the United States as a plaintiff in a qui tam action; observed that conditions in Pakistan would be too dangerous for his children, and especially his daughter, to return there with him; and explained that he and his wife are the primary caretakers of their elderly parents. He also asserted that his ex-wife had submitted a letter in support of his efforts to challenge his domestic-violence conviction. The conviction was set aside for lack of jurisdiction in March 2013.

Rais next filed a motion with the BIA to reopen and administratively close—read: "suspend"—the removal proceedings against him while he awaited USCIS's ruling. He had filed

---

jurisdiction over his application to adjust status to that of a lawful permanent resident" "[b]ecause [his] last entry into the U.S. was through a grant of advance parole[.]"

[5]USCIS initially denied Rais's third application (his fourth if one counts the adjustment of status that Rais sought before the IJ) on the mistaken ground that the IJ who was presiding over the removal proceedings against Rais "ha[d] sole jurisdiction to adjudicate any application for adjustment of status." (A.R. 199). Rais then filed a motion to reopen his case with the BIA on March 9, 2012; the BIA denied the motion on the ground that USCIS did, in fact, have jurisdiction over Rais's application. (A.R. 180 ("The USCIS decision appears to be in error, as . . . adjudication of the adjustment application may proceed regardless of the outstanding removal order.")). USCIS then exercised jurisdiction over the application and dismissed it for the same reason that it had dismissed Rais's second application—Rais's domestic-violence conviction.

[6]On May 7, 2013, this court upheld the BIA's decision as reasonable. *Rais*, 518 F. App'x at 477. Citing 8 U.S.C. §§ 1252(a)(1) and (a)(2)(B)(i), respectively, the court also concluded that it lacked jurisdiction to review USCIS's denial of Rais's third application because the decision was not a final order of removal and because it lacked the power to review discretionary denials of adjustments of status in any case. *Id.*

a previous motion to reopen in March of 2012, but was unsuccessful.[7]  In his second motion, filed on March 11, 2013, Rais invoked only the BIA's authority to act *sua sponte* as a basis for granting him relief, stating the following in relevant part:

> This is Dr. Rais's second motion.  He filed his first motion when the USCIS ruled that the Immigration Court, and not the USCIS, had jurisdiction over his adjustment of status application.  The USCIS later reconsidered its decision and exercised jurisdiction over Dr. Rais's application.
>
> The [BIA] should exercise its sua sponte authority to reopen and administratively close these proceedings because of the compelling humanitarian factors.

(A.R. 23 (citing *In re J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997)); *accord* A.R. 25 (also citing *In re J-J-*, 21 I. & N. Dec. at 984)  ("There are exceptional circumstances in Dr. Rais's case that warrant the sua sponte reopening of his removal proceedings.")).

On May 15, 2013, the BIA denied the second motion as untimely and number-barred.  It observed that the motion had been filed more than a year after the final order of removal had been entered and explained that administrative closure is "not appropriate" after the entry of a final order.[8]  The BIA also reaffirmed its previous determination that USCIS had jurisdiction over Rais's application for adjustment of status and concluded that Rais "ha[d] not demonstrated 'exceptional circumstances' that would warrant the exercise of [the BIA's] sua sponte authority to reopen" the removal proceedings against him.[9]  According to the BIA, although it "sympathize[d] with the procedural irregularities that [Rais] ha[d] faced,"[10] it would not grant Rais's motion to reopen because USCIS appeared to be proceeding with adjudication of his latest application.

---

[7]*See supra* note 5 and accompanying text.  An alien generally may file only one motion to reopen removal proceedings.  8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2).

[8]As mentioned above, the BIA had affirmed the IJ's order of removal against Rais on February 13, 2012. *See* 8 U.S.C. § 1101(a)(47)(B) (explaining that an order of removal becomes final after the BIA affirms an IJ's order of removal or after the period of time during which appeal to the BIA is available expires, whichever is earlier).

[9]*See supra* note 5 and accompanying text.  Motions to reopen generally must be filed within ninety days of the date of entry of a final removal order unless certain statutory exceptions, not alleged here, are met. *See* 8 U.S.C. § 1229a(c)(7)(C)(i)-(iv); 8 C.F.R. §§ 1003.2(c)(2), (c)(3); *see also infra* note 12 and accompanying text.  Because Rais filed his second motion to reopen more than a year after the BIA's final removal order was entered, and because a party may only file one motion to reopen removal proceedings, the BIA could only reopen the removal proceedings against Rais by finding that his case warranted the exercise of its *sua sponte* authority. *See* 8 C.F.R. § 1003.2(a).

[10]*See supra* note 5 and accompanying text.

**C.      The Instant Proceedings.**

Rais petitioned this court for judicial review of the BIA's order on May 24, 2013, raising two claims for relief: (1) whether the denial of his second motion to reopen frustrated his statutory right to apply for adjustment of status before USCIS; and (2) whether the denial ran counter to the policy goals of avoiding needless separation of families.  He also requested that the court stay his removal from the country and hold his petition in abeyance until USCIS adjudicated his status-adjustment application.[11]

On October 30, 2013, we granted the first request but denied the second, concluding that USCIS's disposition of Rais's application "w[ould] have no impact on the issues presented [to this court]."  We also concluded that Rais would not be prejudiced even if we issued a ruling before USCIS adjudicated his application because Rais could request a stay of removal from the Department of Homeland Security (DHS).  We now conclude that we lack jurisdiction to review the BIA's denial of Rais's second motion to reopen.

## II.      ANALYSIS

**A.      Statutory Prerequisites.**

As of May 11, 2005, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, governs judicial review of final orders of removal.  The act empowers this court to review final orders of removal as long as (1) a petition for judicial review is filed within thirty days of such an order, and (2) the IJ who completed the removal proceedings did so within this circuit. 8 U.S.C. § 1252(a), (b)(1)-(2); *see id.* § 1101(a)(47)(B) (explaining that an order of removal becomes final after the BIA affirms an IJ's order of removal or after the period of time during which appeal to the BIA is available expires, whichever is earlier).  This authority extends to the denial of motions to reopen removal proceedings.[12]  *See Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006) (citing, *inter alia*, *Prekaj v. INS*, 384 F.3d 265, 268 (6th Cir. 2004) ("The denial

---

[11]The Attorney General did not oppose Rais's request for a stay but objected to holding Rais's petition in abeyance.

[12]We generally may review such a denial only to the extent that a petitioner "has exhausted all administrative remedies available to [him] as of right."  8 U.S.C. § 1252(d)(1).  Because Rais invoked only the BIA's *sua sponte* authority as a basis for relief in his second motion to reopen, he failed to exhaust his administrative remedies with respect to relief on any other basis.

of a motion to reopen is a final order subject to judicial review.")).  Additionally, the scope of our review is limited to "the administrative record on which the order of removal is based." *Id.* § 1252(b)(4).  The standard by which we assess that record is as follows: "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.*

Here, the facts are not in dispute.  The BIA denied Rais's second motion to reopen the removal proceedings against him on May 15, 2013, and Rais filed a petition for judicial review of that denial nine days later, on May 24, 2013.  The IJ who completed removal proceedings against Rais did so in Detroit, Michigan.  Accordingly, the court's exercise of jurisdiction over Rais's petition ordinarily would be proper.

### B.      Jurisdictional Question.

There exists, however, a jurisdictional question related to the BIA's denial of the underlying motion to reopen.  Rais neither disputes that the motion was both untimely and number-barred nor asserts that he qualifies for any exception to the filing requirements.  *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i) (filing requirements); 8 C.F.R § 1003.2(c)(2) (same); *id.* § 1003.2(c)(3)(i)-(iv) (exceptions to filing requirements).[13]  Accordingly, the BIA's *sua sponte* authority to reopen removal proceedings was the only means by which he could have obtained relief.  *See* 8 C.F.R § 1003.2(a) ("The [BIA] may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The [BIA] has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief.").  This authority is available only "in exceptional situations," *In re J-J-*, 21 I. & N. Dec. at 984, and "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations[ ] where enforcing them might result in hardship," *id.*

As the Supreme Court has explained, there is no statutory mechanism by which removal proceedings may be reopened.  *INS v. Doherty*, 502 U.S. 314, 322 (1992); *cf. Kucana v. Holder*,

---

[13]The time for filing a motion to reopen also may be equitably tolled if a petitioner, "'despite diligent efforts, did not discover [his] injury until after the limitations period had expired,'" *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (quoting *Tapia-Martinez v. Gonzalez*, 482 F.3d 417, 422 (6th Cir. 2007)), such as when "'a petitioner has received ineffective assistance of counsel,'" *id.* (quoting *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005)).

558 U.S. 233, 243-44 (2010) (citing 8 C.F.R. § 1003.2(a)) (explaining that the BIA's "authority to act on a motion to reopen" is not provided by statute "but only in the Attorney General's regulation"). 8 U.S.C. § 1229a(c)(7) authorizes the *filing* of motions to reopen but says nothing as to the granting of such motions.[14] The source of the BIA's authority on reopening, 8 C.F.R. § 1003.2, "requires that under certain circumstances a motion to reopen be denied, but does not specify the conditions under which it shall be granted[.]" *Doherty*, 502 U.S. at 322-23. Consequently, the decision to grant or deny a motion to reopen is discretionary. *Id.* (citing *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984)); *Haddad*, 437 F.3d at 517 (quoting 8 C.F.R. § 1003.2(a)). This court generally reviews such a decision for abuse of discretion.[15] *Haddad*, 437 F.3d at 517 (citing, *inter alia*, *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004)); *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (citing *Haddad*).

With regard to the BIA's *sua sponte* authority, however, we apply a different rule. Under *Barry v. Mukasey* and *Harchenko v. INS*, the exercise of this specific authority "'is committed to the unfettered discretion of the BIA' and therefore is not subject to judicial review." *Barry*, 524 F.3d at 723 (quoting *Harchenko*, 379 F.3d at 410-11). Our most recent decisions on the matter—for example, *Lisboa v. Holder*, __ F. App'x __, 2014 WL 2869204 (June 2014), *Zhang v. Holder*, 702 F.3d 878, 882 (6th Cir. 2012), and *Gor v. Holder*, 607 F.3d 180, 182 (6th Cir. 2010)—adhere to this view. Accordingly, we lack jurisdiction to review the BIA's denial of Rais's second motion to reopen.

---

[14] "[T]here is a world of difference between the immigrant's *statutory* right to file a motion to reopen . . . and the discretionary right of the BIA—a right neither granted by nor addressed by Congress—to reopen *sua sponte*." *Gor v. Holder*, 607 F.3d 180, 194 (6th Cir. 2010) (Batchelder, C.J., concurring).

[15] This practice appears to be in conflict with 8 U.S.C. § 1252(a)(2)(B)(ii), which states that courts do not have jurisdiction to review actions by the Attorney General "the authority for which is specified under this subchapter to be in the discretion of the Attorney General." As the Supreme Court recently observed, however, "Federal-court review of administrative decisions denying motions to reopen removal proceedings dates back to at least 1916." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (collecting cases). But, "[m]indful of the [BIA]'s 'broad discretion' in such matters . . . courts have employed a deferential, abuse-of-discretion standard of review." *Id.* (citing *Doherty*, 502 U.S. at 322-24).

C.      **Arguments in Favor of Jurisdiction.**

1. *Kucana*.

Rais contends that the Supreme Court's intervening decision in *Kucana v. Holder* undercuts *Barry* and *Harchenko* and, recognizing that they are otherwise binding on this panel, suggests that this court reconsider those precedents en banc. Two points are relevant here. First, the entirety of Rais's suggestion is as follows: "[t]he *Gor* panel was constrained to follow prior circuit precedent because the Court would have to sit en banc [not] to do so. Thus far, the Court has not considered this issue en banc but this case presents a good vehicle for doing so." As the Government observes, Rais neither asserts that this case meets the standard for en banc review in Federal Rule of Appellate Procedure 35(b) nor expressly identifies "a question of exceptional importance" or a threat to the "uniformity of the court's decisions." Fed. R. App. P. 35(a). He also has not complied with Sixth Circuit Rule 35(a), which requires that a petition for en banc review "so state plainly on the cover and in the title of the document." Accordingly, Rais has failed to demonstrate entitlement to en banc review.

Second, to the extent that Rais identifies a conflict between this court's precedent and *Kucana*, en banc review is not necessary to resolve it: A prior panel decision is binding on later panels only to the extent that "an inconsistent decision of the . . . Supreme Court [does not] require[] modification of the decision." *Ward v. Holder*, 733 F.3d 601, 608 (6th Cir. 2013) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Accordingly, this panel would not be constrained by *Barry* and *Harchenko* if, as Rais argues, *Kucana* mandates a contrary result. This court already rejected en banc review in *Gor*, 607 F.3d 180, *reh'g en banc denied*, No. 08-3859, 2010 U.S. App. LEXIS 21449 (Oct. 5, 2010), and in an unpublished case that involved similar claims, *see Arestov v. Holder*, 489 F. App'x 911, 921 & n.6 (6th Cir. 2012) ("With respect to the BIA's refusal to exercise its sua sponte authority to grant [the petitioner's] motion to reopen, [the petitioner] contends that the Supreme Court's decision in *Kucana* . . . controls our result. . . . [O]ur court has declined to grant an initial hearing en banc in this case.").

Further, this court already has determined that *Barry* and *Harchenko* were not overruled by *Kucana*. There, the Supreme Court held that 8 U.S.C. § 1252(a)(2)(B)(ii), which strips courts

of jurisdiction to review discretionary actions by the Attorney General, "does not proscribe judicial review of denials of motions to reopen." 558 U.S. at 249. The reason, according to *Kucana*, is that the BIA's discretion regarding such motions is regulatory, rather than statutory, in origin. *Id.* at 248 ("If Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute . . . [it] could easily have said so.").

This holding is consistent with the long-standing practice of federal courts generally to review administrative denials of motions to reopen for abuse of discretion. *Id.* at 242. And, as this court since has recognized, *Kucana* therefore "casts considerable doubt on . . . circuit precedent that dictates that [the exercise of the BIA's *sua sponte* authority to act on such motions is beyond judicial review]." *Gor*, 607 F.3d at 182; *accord id.* at 197 (Cole, J., concurring).[16]

But the Supreme Court specifically stated in *Kucana* that it "[was] express[ing] no opinion on whether federal courts may review the [BIA]'s decision not to reopen removal proceedings *sua sponte*." 558 U.S. at 251 n.18. It also expressly recognized that federal "Courts of Appeals have held that such decisions are unreviewable because *sua sponte* reopening is committed to agency discretion by law." *Id.* (citing, *inter alia*, 5 U.S.C. § 701(a)(2)). Accordingly, "*Kucana* cannot fairly be read as overruling [*Barry* and *Harchenko*]," *Gor*, 607 F.3d at 188, and this court has continued to apply them post-*Kucana*, *see id.* ("[*Barry* and *Harchenko*] remain the law of this circuit."); *Zhang*, 702 F.3d at 882 (relying on *Barry* for the proposition that the court was "without jurisdiction to review" a "BIA determination to forgo the exercise of its *sua sponte* authority"); *Arestov*, 489 F. App'x at 921 ("*Kucana* merely called into doubt the reasoning in [*Barry* and *Harchenko*] rather than overruling them."). Under these precedents, we do not have jurisdiction to review the BIA's denial of Rais's motion to reopen.

---

[16]Chief Judge Batchelder concurred separately in *Gor* "to contest the notion . . . that [*Kucana*] casts considerable doubt on [*Barry* and *Harchenko*.]" *Gor*, 607 F.3d at 193 (Batchelder, C.J., concurring). According to Chief Judge Batchelder, "*Harchenko* and *Barry* remain good law because they were premised on the well-established principle that 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* at 195 (Batchelder, C.J., concurring) (quoting *Harchenko*, 379 F.3d at 411).

2. <u>8 U.S.C. § 1252(a)(2)(D)</u>.

Generously construed, Rais's brief contends that judicial review nevertheless remains available under 8 U.S.C. § 1252(a)(2)(D), which provides that federal courts may review "constitutional claims" and "questions of law" despite "any other provision of [that] chapter."[17] The claim is weak, as it states only that "[t]he Court has jurisdiction to review [a] final order of removal, including constitutional claims and questions of law," and citing as support only § 1252(a)(1), which authorizes review of final orders of removal, and § 1252(a)(2)(D). Pet'r's Br. 11. Rais refers to § 1252(a)(2)(D) at one other place in his brief, as support for an equally unsubstantiated phrase: "The Circuit Court can review constitutional claims and questions of law."[18] But in neither place does Rais offer argument in support of this claim. Accordingly, we consider the claim waived. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]t is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1990)).

In any event, neither of the two claims that Rais raises before this court is a constitutional claim, and only the first, which alleges the frustration of a statutory right, is even potentially a

---

[17]Relying on the Second Circuit's opinion in *Chen v. U.S. Dep't of Justice*, 434 F.3d 144 (2d Cir. 2006), this court defined § 1252(a)(2)(D) to include "constitutional and statutory-construction questions, not discretionary or factual questions" in *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (2006). Thus, a petitioner cannot create jurisdiction by alleging "nothing more than a challenge to the [BIA's] discretionary and fact-finding exercises cloaked as a question of law[.]" *Abdul v. Holder*, 326 F. App'x 344, 347 (6th Cir. 2009) (quoting *Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 850 (8th Cir. 2008)) (concluding that asserting, without evidence, that the BIA ignored its own binding precedent does not raise a question of law); *see also Reyes v. Holder*, 410 F. App'x 935, 938 (6th Cir. 2011) (concluding that an objection to the weight that the BIA assigned certain evidence, without more, does not raise a question of law); *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009) (same).

After this court decided *Almuhtaseb*, the Second Circuit revised *Chen* to expand its definition of "question of law." *Chen v. U.S. Dep't of Justice* (*Chen II*), 471 F.3d 315, 326-27, 329 (2d Cir. 2006) (citing *INS v. St. Cyr*, 533 U.S. 289 (2001)) (revised Dec. 7, 2006). Since *Chen II*, a circuit split has emerged over whether that term includes only issues of statutory construction and interpretation or also includes mixed questions of law and fact. *See, e.g.*, *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam) (including mixed questions); *Khan v. Filip*, 554 F.3d 681, 688-89 (7th Cir. 2009) (including only "pure" questions of law). This court, however, expressly has declined to expand its definition of "question of law" to include mixed questions of law and fact. *Khozhaynova v. Holder*, 641 F.3d 187, 192 (6th Cir. 2011) ("We continue to maintain a more narrow interpretation of our jurisdiction . . . and limit review to constitutional or statutory interpretation claims.").

[18]*Id.* at 16. This reference has to do with judicial review of the denial of an application for adjustment of status, not with the denial of a motion to reopen removal proceedings.

question of law.[19]  But *Barry* and *Harchenko* prevent the panel from exercising jurisdiction over even that claim.

Recall that the Supreme Court held in *Kucana* that 8 U.S.C. § 1252(a)(2)(B)(ii), which strips courts of jurisdiction to review discretionary actions by the Attorney General, "does not proscribe judicial review of denials of motions to reopen," 558 U.S. at 249, but offered "no opinion on whether federal courts may review the [BIA]'s decision not to reopen removal proceedings *sua sponte*," *id.* at 251 n.18.  Accordingly, under *Kucana* and in the absence of *Barry* and *Harchenko,* § 1252(a)(2)(D) would enable constitutional claims and questions of law to survive any bar to judicial review of the BIA's *sua sponte* denials that "the confluence of . . . § 1252(a)(2)(B)(ii) and 8 C.F.R. § 1003.2[a]" might otherwise impose.  *Gor,* 607 F.3d at 187.

But *Barry* and *Harchenko* expressly hold that the BIA's exercise of its *sua sponte* authority "'is committed to [its] unfettered discretion . . . and therefore is not subject to judicial review.'"  *Barry,* 524 F.3d at 723 (quoting *Harchenko,* 379 F.3d at 410-11).  And, as Chief Judge Batchelder has noted, neither case relied on § 1252(a)(2)(B)(ii).  *Gor,* 607 F.3d at 195 (Batchelder, C.J., concurring).  Instead, "[t]he *Harchenko* and *Barry* panels concluded, as has nearly every other Circuit to consider the question, that the BIA's exercise of its *sua sponte* authority was not reviewable because there was simply 'no law to apply.'"[20]  *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971)).  Thus, according to Chief Judge Batchelder, "the firm requirement that only Congress may remove [the courts'] jurisdiction [to review the exercise of that authority] simply does not exist."  *Id.*

Put differently, Congress need not designate the BIA's *sua sponte* authority as discretionary by statute in order for the Attorney General's regulatory determination that the power is discretionary, *see* 8 C.F.R. § 1003.2(a), to deprive courts of jurisdiction to review its

---

[19]Rais's statutory-frustration claim may raise a question of law.  *See supra* note 16 and accompanying text; *cf. United States v. Cassidy,* 899 F.2d 543, 545 (6th Cir. 1990) ("Statutory interpretation is a question of law which this Court reviews *de novo*.").  Rais's second claim asserts that the BIA abused its discretion by denying his motion to reopen on jurisdictional grounds and thereby violating "the Government's stated public policy goals" to "avoid needless separations of families."  But Rais identifies no statutes, regulations, or other legal authorities for the proposition that he has a protectable interest in such goals; therefore, the claim does not raise a question of law.

[20]As *Harchenko* explained, "[8 C.F.R. § 1003.2(a)] provides no standard by which to judge the agency's exercise of discretion. It allows the BIA to reopen proceedings in exceptional situations; it does not require the BIA to do so.  As such, this court is without jurisdiction to review the BIA's decision declining to exercise its discretion[.]").  379 F.3d at 411; *see also Barry,* 524 F.3d at 723 (quoting this language from *Harchenko*).

exercise. This is so because "[t]he power of the BIA to reopen *sua sponte* arises *only* from its own regulations." *Gor*, 607 F.3d at 195 (Batchelder, C.J., concurring) (second emphasis added). Consequently, Congress's determination in 8 U.S.C. § 1252(a)(2)(D) that federal courts may review "constitutional claims" and "questions of law" despite "any other provision of [that] chapter," has no bearing on the question of whether courts may review the BIA's exercise of its *sua sponte* authority, for which no chapter of *any* legislation provides. And because *Barry* and *Harchenko* hold that the BIA's exercise of its *sua sponte* authority is not subject to judicial review, the panel lacks jurisdiction over Rais's petition even if it alleges constitutional claims or questions of law.

## III.   CONCLUSION

Rais failed to satisfy the requirements for filing a second motion to reopen the removal proceedings against him and claims shelter under no exception to those requirements. Consequently, the BIA's *sua sponte* authority to grant his motion was the only means by which he could have obtained relief. Binding circuit precedent, unimpaired by recent Supreme Court case law, establishes that this court does not have jurisdiction to review the BIA's decision to refrain from exercising that authority. We therefore **DISMISS** Rais's petition for judicial review of the BIA's decision for want of jurisdiction.