NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0032n.06

**No. 19-3116**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ABDULKADIR IBRAHIM
MOHAMED,

          **Petitioner,**

v.

WILLIAM P. BARR, Attorney
General,

          **Respondent.**

> **FILED**
> Jan 21, 2020
> DEBORAH S. HUNT, Clerk

**ON PETITION FOR REVIEW FROM
THE UNITED STATES BOARD OF
IMMIGRATION APPEALS**

BEFORE:    DAUGHTREY, CLAY, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Abdulkadir Ibrahim Mohamed asks this Court to review the Board of Immigration Appeals' denial of his motion to reopen removal proceedings. *See* 8 U.S.C. § 1229a(c)(7). For the reasons set forth below, we dismiss Mohamed's petition for lack of jurisdiction.

## I. BACKGROUND

Petitioner Abdulkadir Ibrahim Mohamed is a citizen of Somalia who came to the United States as a refugee in 2000. After moving to the United States, Mohamed applied for lawful permanent resident status and became a green card holder in 2003. But Mohamed also acquired a significant criminal history here, with several charges for crimes like breaking and entering and aggravated criminal trespass.

In December 2008, while in jail after a conviction for breaking and entering, Mohamed was issued a notice to appear alleging that he was removable from the United States. There were several mistakes with this notice to appear. For example, the notice incorrectly claimed that

Mohamed had not been legally admitted to the United States and cited the immigration law provision for inadmissibility. Mohamed was also served with a "Notice of Intent to Terminate Refugee Status" (A.R. at 388), despite already being a lawful permanent resident.

But the upshot was that the government accused Mohamed of committing a "crime involving moral turpitude," which would cost him his immigration status. (*Id.* at 392–93); *see also* 8 U.S.C. § 1182(a)(2)(A)(i) ("[A]ny alien convicted of . . . (I) a crime involving moral turpitude . . . is inadmissible."); *cf.* 8 U.S.C. § 1227(a)(2)(A)(i) ("Any alien who (I) is convicted of a crime involving moral turpitude . . . , and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."); *id.* § 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude . . . is deportable."). Specifically, the notice to appear said Mohamed was convicted of two counts of breaking and entering and one count of escape, all under Ohio law, and that these crimes each involved moral turpitude. *See* Ohio Rev. Code Ann. § 2911.13 (breaking and entering); *id.* § 2921.34 (escape).

A hearing was never held on Mohamed's notice to appear. Instead, in February 2009, Mohamed signed a "stipulated request for removal order and waiver of hearing," essentially an unconditional guilty plea in the immigration law context. (A.R. at 383–87.) In the stipulation, Mohamed waived the right to counsel, admitted that "all of the factual allegations contained in the [notice to appear] are true and correct as written," and conceded that he "should be removed from the United States based on those charges." (*Id.* at 383–84.) Mohamed waived the right to any relief from removal, designated Somalia as his country of removal, and said he had "no fear of returning to that country." (*Id.* at 384–85.) He also waived any right to appeal from any resulting order of

removal. Based on this stipulation, the immigration judge ordered Mohamed to be removed from the United States "as soon as possible." (*Id.* at 381–82.)

It turns out "as soon as possible" was not very soon at all. Almost a decade later, the Department of Homeland Security ("DHS") had still not removed Mohamed. According to Mohamed, this was because the conditions in Somalia were too dangerous for the United States to deport people there. But in 2017, DHS attempted to remove Mohamed to Somalia. This attempt was unsuccessful, and the deportation flight landed in Senegal before returning to the United States. Back in the United States, Mohamed became a part of a class action lawsuit against DHS related to this failed deportation flight. Despite this, after this Court denied a motion to stay, *Mohamed v. Barr*, No. 19-3116 (6th Cir. Apr. 10, 2019) (order), Mohamed was removed to Somalia on April 11, 2019.

After the failed deportation flight but before his later removal, Mohamed—represented by counsel—also sought to reopen his 2009 removal proceedings. In his motion to reopen, Mohamed asked for relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because a motion to reopen must normally be filed within ninety days of an order of removal (as opposed to nine years), Mohamed also claimed that conditions in Somalia had changed since 2009, excusing his late filing.

Mohamed claimed four changes in Somalia's country conditions that could support his motion to reopen:

> (1) terrorist groups such as Al Shabaab and ISIS-Somalia have recently increased the number of targeted attacks against Somali civilians and the Western-backed military forces in the country in an organized effort to overthrow the weak Somali government; (2) Al Shabaab has infiltrated the Somali government institutions; (3) Al Shabaab exercises de facto government control over significant Somali territory; and (4) Mr. Mohamed is now a high-

profile Americanized Somali and plaintiff in a class action lawsuit
that has attracted international media attention.

(A.R. at 202.) Based on these changes, Mohamed feared he would be persecuted or killed upon his return to Somalia.

The immigration court rejected Mohamed's motion, saying that he failed to demonstrate a material change in country conditions in Somalia. First, while Mohamed claimed that Al-Shabaab and ISIS-Somalia have stepped up attacks against civilians and Western-backed forces, the immigration judge noted that "the number of civilian deaths caused by Al-Shabaab has stayed the same or *decreased* since 2009." (*Id.* at 98.) The immigration judge also pointed to evidence that, in 2009, fighting between Somali military forces and terrorist groups resulted in thousands of civilian deaths, while Al-Shabaab caused 880 civilian deaths in 2017.

Second, the immigration court found that instead of Al-Shabaab having infiltrated Somali government institutions after 2009, it had actually done so *by* 2009, meaning there had not been a change in country conditions. Specifically, the judge noted that starting in 2008, in regions under its control, Al-Shabaab "established governing structures" including police, courts, and other governmental services. (*Id.* (quoting A.R. at 258).) He also pointed to Mohamed's expert, who said that Al-Shabaab "*maintains* a presence in Mogadishu and elsewhere in Somalia," implying that this presence is not new. (*Id.* (quoting A.R. at 284).)

Third, the immigration judge similarly found that Al-Shabaab's *de facto* control over Somali territory had not increased, and if anything had decreased since 2009. The judge noted that Al-Shabaab had captured "major urban and economic centers" starting in 2008, and any recent acquisitions of territory were simply regaining areas lost since 2010. (*Id.* (quoting A.R. at 257).)

Finally, the immigration court held that Mohamed's status as a "high-profile Americanized Somali and plaintiff in a class action lawsuit" was a change in personal conditions, not country

conditions, and so could not support the late filing of a motion to reopen. (*Id.* at 98–99.) In sum, the judge found that "the situation in Somalia has remained the same" since Mohamed signed his stipulated removal in 2009, and so he denied the motion to reopen. (*Id.* at 99.)

Mohamed then appealed to the Board of Immigration Appeals ("BIA"), criticizing the immigration judge's findings on country conditions in Somalia. Mohamed argued that the immigration judge ignored significant increases of displacement within Somalia, that the infiltration of the Somali government had to be a new phenomenon because the currently recognized government (the Federal Government of Somalia, or FGS) did not exist until 2012, and that Al-Shabaab recently gained control of large areas of Somalia. Mohamed also claimed that his role in the lawsuit could support a change in country conditions because the failed deportation flight garnered significant publicity within Somalia.

The BIA affirmed the immigration judge's decision, finding that Mohamed failed to sufficiently establish changed country conditions. Specifically, the BIA held that the evidence presented did not establish (1) a "material increase in attacks" by Al-Shabaab and ISIS-Somalia since 2009, (2) that Al-Shabaab infiltrated the Somali government after 2009 instead of by 2009, or (3) that Al-Shabaab exercised "de facto governmental control" over more territory in 2018 than in 2009. (*Id.* at 4.) Further, the BIA agreed with the immigration judge that Mohamed's class-action involvement was a change in personal, not country conditions, and that the record did not show "that the way Al-Shabaab treats Americanized Somalis has materially changed since 2009." (*Id.*)

Mohamed then petitioned this Court for review, largely raising the same arguments as in his appeal to the BIA.[1] The government, however, says that we lack the authority to review the BIA's decision. This is because Mohamed's removability was based on his conviction for a crime involving moral turpitude, which strips this Court of jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(C). Mohamed responded by noting, for the first time, that his convictions were not actually for crimes involving moral turpitude, which if true would mean there was no basis for his removal at all. In support of this, Mohamed does not argue that his stipulation was not knowingly and voluntarily made, but rather says that it cannot supplant this Court's independent legal judgment as to whether his conviction was for a crime involving moral turpitude. Finally, Mohamed argues that even if the jurisdictional bar did apply, we could still review the BIA's decision because its errors regarding changed country conditions were so egregious that they amount to legal, rather than factual errors.

## II. DISCUSSION

A threshold question of jurisdiction stands between this Court and Mohamed's claims. According to the government, because Mohamed's underlying order of removal is based on the inadmissibility provision for crimes involving moral turpitude, the Immigration and Nationality Act ("INA") bars us from reviewing his petition. Mohamed responds by arguing that his convictions were not for crimes involving moral turpitude, and that even if the jurisdictional bar applies, the BIA's factual mistakes on changed country conditions were so severe that they were transformed into questions of law, which this Court can still review.

While Mohamed may be correct about the nature of his underlying convictions, his order of removal became final in 2009, and Mohamed cannot collaterally challenge it now. Thus, the

---

[1] Mohamed appears to have dropped his argument regarding the increase in territory under Al-Shabaab's *de facto* control.

jurisdictional bar applies, regardless of the specific crimes listed in Mohamed's stipulated order of removal. Furthermore, while certain factual errors can be so extreme as to raise a question of law, this is not the case here: the BIA considered and rejected Mohamed's arguments based on evidence in the administrative record. Accordingly, we lack jurisdiction to review Mohamed's claims, and so his petition for review must be dismissed.

### A. Jurisdictional Bar from Mohamed's Stipulation of Removability

The government argues that this Court lacks jurisdiction over Mohamed's petition because of the jurisdictional bar found in 8 U.S.C. § 1252(a)(2)(C). That provision, titled "orders against criminal aliens," provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in" various sections of the INA. 8 U.S.C. § 1252(a)(2)(C). One of those sections, § 1182(a)(2), is the provision Mohamed was charged under in his notice to appear. That statute provides that "any alien convicted of, or who admits having committed, . . . (I) a crime involving moral turpitude . . . is inadmissible." *Id.* § 1182(a)(2)(A)(i).

In response, Mohamed says that despite his stipulation of removability under § 1182(a)(2), the jurisdictional bar should not apply. This is because the crimes listed in his notice to appear are not actually crimes involving moral turpitude (which, in addition to lifting the jurisdictional bar, would actually undermine the legal basis for his removal altogether).

The trouble for Mohamed comes from the procedural posture of this case. Instead of having directly challenged his order of removal, Mohamed comes to this Court on review of a motion to reopen removal proceedings. And in Mohamed's motion to reopen, he did not challenge the order of removal based on whether the underlying crime involved moral turpitude. Nor does he claim that his stipulation was not knowingly and voluntarily made. Presumably, this is because the INA

sets a ninety-day time limit on filing a motion to reopen based on these claims. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

Mohamed instead moved to reopen proceedings in order to apply for asylum, withholding of removal, and CAT relief, and based this request on changed country conditions in Somalia. *See id.* § 1229a(c)(7)(C)(ii) (providing no time limit for moving to reopen based on changed country conditions). In short, this means Mohamed did not challenge his "removability" at all—the relief he seeks only serves to prevent the actual removal of an otherwise removable noncitizen.

The question is then, if Mohamed is not challenging his underlying removability, does the jurisdictional bar still apply based on his incorrect stipulation to having committed a crime involving moral turpitude? Based on the language of the INA, prior case law, and general principles of finality, we believe the answer is yes.

First, under the INA, a stipulation of removability is "a conclusive determination of the alien's removability from the United States." 8 U.S.C. § 1229a(d). While this "conclusive determination" would fall if the stipulation itself were invalid, *see, e.g.*, *United States v. Baptist*, 759 F.3d 690, 696 (7th Cir. 2014) (discussing a challenge to a stipulated removal order based on the stipulation not being knowing and voluntary), Mohamed does not challenge his stipulation in this proceeding. Similarly, this Court has previously indicated that the application of § 1252(a)(2)(C)'s jurisdictional bar to a motion to reopen turns on the basis for removability cited in the underlying removal order, *Zakar v. Sessions*, 739 F. App'x 774, 776–77 (6th Cir. 2018), suggesting that we should not look through the order in this collateral posture. Thus, finding Mohamed not to be removable on the basis listed in his stipulation would undercut the requirements of § 1229a(d).

Second, Mohamed's order of removal was made final through his failure to appeal to this Court when the immigration judge entered the order in 2009. This finality is jurisdictional because it is rooted in the INA's deadline for appeals. 8 U.S.C. § 1252(b)(1); *see also, e.g.*, *Juarez-Chavez v. Holder*, 515 F. App'x 463, 465–66 (6th Cir. 2013) (finding that a noncitizen could not challenge a stipulated removal order because of the time limit in § 1252(b)(1)); *Gor v. Holder*, 607 F.3d 180, 185 (6th Cir. 2010) ("This time limitation is enforced strictly, and courts lack jurisdiction to review a BIA decision when a petitioner fails to seek judicial review of an order within the applicable time period.").

The Supreme Court confirmed this view in *Stone v. INS*, 514 U.S. 386 (1995). In *Stone*, a noncitizen appealed an order of removal to the BIA and his appeal was denied. *Id.* at 388–89. Instead of immediately appealing, he first filed a motion to reopen with the BIA, which was later denied as frivolous. *Id.* at 389. After that denial, Stone sought review in this Court, challenging both the underlying removal order and the denial of his motion to reopen.

The Supreme Court dismissed Stone's challenges to any part of his underlying removal order. *Id.* at 389–90. This is because the INA's time limits for appeal were jurisdictional, and so even though Stone filed a motion to reopen, the order of removal became final when that time limit expired. *Id.* at 405–06. Applying this principle here, Mohamed cannot now challenge a necessary component of the stipulated order of removal, which became final back in 2009.

Third, the finality of Mohamed's order of removal is further cemented by the law-of-the-case doctrine. Under this doctrine, "[a] party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter, for '[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" *United States v. Adesida*,

129 F.3d 846, 850 (6th Cir. 1997) (second alteration in original) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)). "This doctrine exists for good reason—it discourages 'perpetual litigation' and promotes finality in proceedings by requiring that parties seek review of a claim in the first appeal." *Burley v. Gagacki*, 834 F.3d 606, 619 (6th Cir. 2016) (quoting *United States v. McKinley*, 227 F.3d 716, 719 (6th Cir. 2000)). This concern is precisely why the INA only allows late motions to reopen based on changed country conditions, 8 U.S.C. § 1229a(c)(7)(C)(ii), an issue that by definition could not be raised in an earlier stage of the proceedings.

At bottom, Mohamed seeks to challenge the legal basis for his removal even though he stipulated to his removability and failed to seek review within the required timeline. In this far later procedural stance, we must take his order of removal as a given, which means the INA's jurisdictional bar applies to this case. Perhaps there is some other way for Mohamed to challenge his stipulated removal order. *Cf. INS v. St. Cyr*, 533 U.S. 289, 298–301 (2001) (discussing the interplay between habeas corpus and immigration proceedings); *Ragbir v. Homan*, 923 F.3d 53, 73–77 (2d Cir. 2019) (same); *Juarez-Chavez*, 515 F. App'x at 467 (same). But absent such a challenge, Mohamed cannot attack the legal basis of his underlying removal order to get around the INA's jurisdictional bar nearly a decade after that order became final.

## B. Question-of-Law Exception to the Jurisdictional Bar

Even though the jurisdictional bar under § 1252(a)(2)(C) applies, this does not spell the end of Mohamed's case. This is because the INA includes an exception to that provision for "review of constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *accord Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009).

Normally, the BIA's determination of changed country conditions is a question of fact, and so would not escape the jurisdictional bar. *E.g.*, *Pepaj v. Mukasey*, 509 F.3d 725, 727–28 (6th Cir. 2007); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). "[T]he existence of 'changed

circumstances' that materially affect eligibility for asylum is a predominantly factual determination, which will invariably turn on the facts of a given case." *Almuhtaseb*, 453 F.3d at 748 (quoting *Ramadan v. Gonzales*, 427 F.3d 1218, 1221–22 (9th Cir. 2005), *withdrawn*, 479 F.3d 646 (9th Cir. 2007) (per curiam)). And when a claim "relies on contesting . . . factual determinations rather than on statutory construction or a constitutional claim," the jurisdictional bar remains intact. *Pepaj*, 509 F.3d at 728 (quoting *Almuhtaseb*, 453 F.3d at 748).

But we have previously noted that, in certain extreme cases, the BIA's errors in assessing changed country conditions can amount to a question of law. *Shabo v. Sessions*, 892 F.3d 237, 239–40 (6th Cir. 2018). This is because, while application of the changed country conditions exception is normally a factual question, "[f]actual errors can qualify as legal errors when 'important facts have been *totally overlooked* and others have been *seriously mischaracterized*.'" *Id.* (quoting *Ventura-Reyes v. Lynch*, 797 F.3d 348, 360 (6th Cir. 2015)). "[W]hether the BIA correctly considered, interpreted, and weighed the evidence presented," however, "is not a constitutional issue or question of law. Such a question is instead factual." *Id.* at 239 (citation omitted) (quoting *Arestov v. Holder*, 489 F. App'x 911, 916 (6th Cir. 2012)).

Mohamed claims that this case involves an extreme error because the BIA ignored "the increased terrorist threat posed by the rise of ISIS-Somalia," ignored and conflated "evidence that Al-Shabaab infiltrated the Federal Government of Somalia ('FGS') by 2009," and ignored the changed country conditions caused by Mohamed's "increased public notoriety and media attention due to the failed December 7, 2017 deportation flight." (Pet'r's Br. at 10.) But a review of the administrative record shows this is not the case, and that what Mohamed frames as totally overlooking his evidence actually amounts to a dispute over what his evidence showed. Such a

disagreement does not implicate a question of law, and so it cannot provide us with jurisdiction over Mohamed's petition.

For example, the BIA affirmed the immigration judge's finding that Mohamed had shown "no material increase in attacks . . . by Al-Shabaab and ISIS-Somalia since 2009." (A.R. at 4.) While Mohamed complains that the immigration judge ignored ISIS-Somalia by focusing instead on the decrease in civilian deaths caused by Al-Shabaab, this was in the course of a discussion of Mohamed's "fail[ure] to demonstrate an increase in attacks . . . by Al-Shabaab *and ISIS-Somalia*." (A.R. at 98 (emphasis added).) Instead of ignoring Mohamed's evidence as to ISIS-Somalia, this suggests that the immigration judge considered it but rejected Mohamed's claim of increased terrorist activity based on other evidence in the record, such as the simultaneous decrease in activity from Al-Shabaab.

Mohamed's other claims fare no better. On his claim regarding Al-Shabaab's infiltration of the Somali government, the immigration judge found this did not amount to changed country conditions, since Al-Shabaab controlled major governmental functions in Somalia beginning in 2008. While Mohamed is correct that this is not the same as the FGS, which was established after 2009, this is a distinction without a difference with respect to the threat he faces from Al-Shabaab in Somalia. Similarly, the immigration judge was correct to construe Mohamed's evidence regarding his status as a "high-profile Americanized Somali and plaintiff in a class action lawsuit" as reflecting a change in personal, not country circumstances. (A.R. at 98–99.) Looking instead to conditions in Somalia, the immigration judge found that Mohamed failed to show, as a factual matter, "that the way Al-Shabaab treats Americanized Somalis has changed since 2009." (*Id.* at 99.)

The board's "decision to highlight some pieces of evidence in the record over others when reaching those conclusions" cannot transform Mohamed's complaints into questions of law, as his petition really asks us to perform an "impermissible review of [the BIA's] fact-finding rather than an assessment of whether [it] committed constitutional or legal error." *Ventura-Reyes*, 797 F.3d at 360; *see also Arestov*, 489 F. App'x at 916 ("[C]laims that [the BIA] failed to emphasize certain factors in a petitioner's case . . . are not subject to review."). And when limited by the jurisdictional bar, this Court cannot "inquire whether [it] would have weighed or interpreted a particular set of facts differently." *Ventura-Reyes*, 797 F.3d at 360. But this is exactly what Mohamed asks us to do in his motion to reopen.

Far from having "totally overlooked" Mohamed's claims, *Shabo*, 892 F.3d at 239–40 (emphasis omitted) (quoting *Ventura-Reyes*, 797 F.3d at 360), the immigration judge and the BIA considered each of his arguments and rejected them based on the evidence. These findings were not "so clearly wrong as to constitute a legal error that escapes the jurisdictional bar," *Ventra-Reyes*, 797 F.3d at 361, and so Mohamed's petition must be dismissed.

### III. CONCLUSION

Because Mohamed's order of removal became final in 2009, the INA's jurisdictional bar applies to his claims even if the order incorrectly concluded that his convictions were for crimes involving moral turpitude. And while this Court can still decide questions of law, Mohamed's challenges to the BIA's findings on changed country conditions ask us to resolve factual issues, not legal ones. This Court lacks jurisdiction to consider Mohamed's claims, and so we dismiss his petition for review.